UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| AMARILLO MEDICAL SPECIALISTS, LLP <br> AMARILLO FAMILY PHYSICIANS, PA and <br> AMARILLO LEGACY MEDICAL ACO, LLC <br><br> Plaintiffs, <br><br> v. <br><br> AKOS MD IPA, LLC, and GENUINE HEALTH GROUP, LLC, <br><br> Defendants. | § § § § § § § § § § § § § § Case No. 2:23-cv-00026-Z-BR |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW AMARILLO MEDICAL SPECIALISTS, LLP, AMARILLO FAMILY PHYSICIANS, LLP and AMARILLO MEDICAL LEGACY ACO, LLC, Plaintiffs, and would for causes of action would respectfully show as follows:

**I.
PARTIES**

1. Plaintiff Amarillo Medical Specialists, LLP ("**AMS**") is a limited liability partnership formed under the laws of Texas with its principal place of business located in Amarillo, Potter County, Texas. All of the partners of AMS are residents of Texas.

2. Plaintiff AMARILLO FAMILY PHYSICIANS, PA ("**AFP**") is a professional association formed under the laws of Texas, with its principal place of business located in Amarillo, Potter County, Texas. All of the owners of AFP are residents of Texas.

3. Plaintiff AMARILLO LEGACY MEDICAL ACO, LLC ("**ALMA**") is a limited liability company formed under the laws of Texas, with its principal place of business located in Amarillo, Potter County, Texas. All of the members of ALMA are residents of Texas.

4. Defendant AKOS MD IPA, LLC ("**AKOS**") is a limited liability company formed under the laws of Arizona, with its principal place of business in Scottsdale, Arizona. AKOS may be served by service upon its registered agent, Kishlay Anand, at 20565 N 19th Avenue, PHOENIX, AZ 85027. Upon information and belief, the members of AKOS are residents of Arizona.

5. Defendant GENUINE HEALTH GROUP, LLC ("**GHG**") is a limited liability company formed under the laws of Florida, with its principal place of business in Coral Gables, Florida. GHG may be served by service upon its registered agent, Marc H Auerbach, 806 South Douglas Road, STE 700, Coral Gables, FL 33134. GHG has stated that none of its members are residents of Texas.

## II.
## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. § 1332, jurisdiction is proper in this Court because the controversy is between citizens of different states and the amount in controversy exceeds $75,000.

7. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because the false representations at issue were made in this district and a substantial part of the events giving rise to the claim occurred in this district.

## III.
## FACTS

8. Under the Affordable Care Act ("**ACA**"), the Federal Government seeks to incentivize healthcare providers to be as efficient and effective as possible. The ACA provides a

number of mechanisms to reduce the cost of federally-insured patients by providing providers financial reimbursement for offering lower-cost solutions.

9. One such program is the federal government's partnership with accountable care organizations ("**ACO**"). An ACO is "an organization of health care practitioners that agrees to be accountable for the quality, cost, and overall care of Medicare beneficiaries who are enrolled in the traditional fee-for-service program who are assigned to it." In other words, an ACO is a healthcare organization that ties provider reimbursements to quality metrics and reductions in the cost of care.

10. ACOs are vetted and approved by the federal Centers for Medicare & Medicaid Services ("CMS"). CMS holds annual enrollment periods, and its enforcement of these deadlines is strict.

11. Once enrolled, participating ACOs that meet specified quality performance standards are eligible to receive a share of any savings when the actual per capita expenditures of their assigned Medicare beneficiaries are a sufficient percentage below their specified benchmark amount.

12. From January 1, 2013 until December 2022, AMS and AFP were enrolled through the Amarillo Legacy Medical ACO in the Medicare Shared Savings Program ACO.

13. On or around June, 2022, Plaintiffs were approached by AKOS. AKOS promised to administer the AMS and AFP's ACO program on terms much more favorable than ALMA was able to provide. Additionally, AKOS promised to contract with ALMA, for ALMA to provide support services to AKOS, AMS and AFP that would improve quality and reduce costs.

14. AKOS immediately represented that it was a subsidiary of GHG and provided documents to support this. For example, on July 26, 2022, AKOS sent its PQEM[1] Codes for the proposed ACO. These codes were on Genuine Health letterhead.

15. Around the same time, Plaintiffs received an email from Gamil Kharfan, Chief Growth Officer of GHG. This email referenced that he "reviewed the historical performance" of AMS and AFP which they had provided to AKOS, and that GHG wished to partner with Plaintiffs.

16. From June until September, 2022, Plaintiffs and Defendants negotiated the terms for Plaintiffs to join Defendants' ACO. As negotiations between Plaintiffs and Defendants progressed, Defendants became more explicit. Plaintiffs were joining a Genuine Health ACO.

17. For example, on July 29, 2022, Defendants wrote Plaintiffs stating:

> Just wanted to circle back around to better understand when your group is making a final decision? We at Apricus Health and **Genuine Health Direct** want your business and are wining to compete for it! Is there anything we can do differently for your group? Any questions we can answer? Can we get on a call.

18. On August 3, 2022, Defendants' employee Mary Black wrote: "Sending invite *from Genuine Health* to join meeting tomorrow at 9:30 a.m. CST. Save the date!" Later that day, Black wrote Plaintiffs stating that "Sean Leimbach, Chief Strategy Officer at Genuine Health Group" wanted to meet.

19. On August 4, 2022, there was a "Teams" meeting between Plaintiffs and GHG. During this meeting Leimbach made it unequivocally clear that 1) AKOS was GHG's subsidiary, 2) AKOS, as GHG's subsidiary, was acting as GHG's agent, 3) ALMA, AMS, and AFP would be joining a GHG ACO, and 4) GHG's ACO would provide substantially more revenue for ALMA, AMS, and AFP than their existing ACO. Leimbach and Plaintiffs had approximately three

---

[1] PQEM codes are the billing codes for most medical services that Plaintiffs provide; the term stands for "primary care qualified evaluation and management."

"Teams" meetings where Leimbach directly informed Plaintiffs that ALMA, AMS, and AFP would be participating in GHG's ACO, which would be managed through its subsidiary and agent, AKOS. During these meetings, Leimbach actively recruited ALMA, AMS, and AFP to join GHG's ACO. These calls were initiated by GHG, and the Teams invite was sent by GHG.

20. Leimbach produced and provided to AMS financial models which showed the profitability of Plaintiffs' participation in the GHG ACO. His models also accounted for 30% of revenue to be paid to GHG.

21. At all times, GHG told ALMA, AMS, and AFP that GHG's approval was needed to join the AKOS/GHG ACO. Ultimately, it was GHG who made substantial revisions to the deal, and GHG who "redlined" the contract that ALMA, AMS, and AFP signed.

22. On September 2, 2022, Leimbach again met with Plaintiffs over Teams and offered "confidential" financial projections showing that ALMA, AMS, and AFP would obtain substantially higher reimbursements from CMS under GHG's ACO rather than their existing structure.

23. These financial projections were the clincher. After reviewing GHG's projections, ALMA, AMS, and AFP promptly agreed to join Defendants' ACO. Ms. Black wrote back immediately, stating:

> Congratulations for joining the ACO Reach-2023 program with AKOS MD IPA and Genuine Health Direct! We are so excited to have you as a partner going forward and look forward to working with you.

24. After signing the contract, GHG reaffirmed the existing understanding that it was managing the ALMA, AMS, and AFP's ACO. "Hi Mary Jo, As you know we are a part of Genuine Health and will be using their P&P for ACO Reach which is being updated as we speak."

25. The truth was the entire program was nothing more than a fraud. AKOS and Genuine Health had no intention of including ALMA, AMS, and AFP in their ACO. Neither AKOS nor GHG intended to perform the contracts which they had entered into with AMS and AFP.

26. GHG accomplished its swindle of Plaintiffs through a mix of flattery and highly optimistic financial projections. GHG offered the CEO of Plaintiffs AMS and ALMA a seat on GHG's ACO board of directors to win the Plaintiffs over.

27. Following GHG's swindle, AMS, AFP, and ALMA attempted to rejoin their previous ACO. However, the deadline set by CMS had run, and AMS, AFP, and ALMA were denied the opportunity to participate in an ACO in 2023 by CMS.

28. As a result of the fraudulent conduct by AKOS and GHG, neither AMS nor AFP are eligible to participate in the ACO program for 2023. In 2022, ALMA received over $2.4 million in shared savings incentives for distribution to its providers. Additionally, by virtue of participation as an 'Advanced Alternative Payment Model' ACO, AMS and AFP collect over $600,000 per year in APM bonuses. Thus, AMS and AFP are likely to be damaged in amounts which exceed $3 million.

## IV.
## CAUSES OF ACTION

### CAUSE ONE – BREACH OF CONTRACT
### (Against AKOS)

29. Plaintiffs contracted with AKOS to provide ACO services.

30. AKOS and GHG have breached this contract by failing to provide any services which it had agreed to provide.

31. Plaintiffs have been damaged in the amount of at least $3 million dollars as a result of AKOS and GHG's wrongful conduct.

### CAUSE TWO – TORTIOUS INTERFERENCE WITH CONTRACT
### (Against GHG)

32. From 2013 through 2022, AFP and AMS contracted with ALMA to provide ACO services.

33. GHG interfered with this contract and induced AFP and AMS to discontinue their relationship with ALMA and instead contract with GHG and AKOS to participate in a GHG-managed ACO.

34. GHG intentionally caused AMS and AFP to discontinue their contractual relationship with false and fraudulent promises of higher revenue. Despite providing detailed financial projections, GHG never intended to perform on its promises to operate an ACO with Plaintiffs.

35. Plaintiffs have been damaged in the amount of at least $3 million dollars as a result of AKOS' wrongful conduct.

### CAUSE THREE – FRAUD and FRAUDULENT INDUCEMENT
### (Against AKOS and GHG)

36. Plaintiffs contracted with AKOS, who was identified as a subsidiary of GHG, to provide ACO services. However, this was in fact a fraud, as AKOS and GHG never intended to perform their part of the ACO contract.

37. AKOS and GHG have breached this contract by failing to provide any and all services which it had agreed to provide.

38. Plaintiffs have been damaged in the amount of at least $3 million dollars as a result of AKOS and GHG's wrongful conduct.

### CAUSE FOUR – NEGLIGENCE and NEGLIGENT MISREPRESENTATION
### (Against AKOS and GHG)

39. AKOS and GHG represented that they would perform ACO services for Plaintiffs for the year 2023 and contracted to do so.

40. Instead, AKOS abandoned AKOS and GHG after the ACO enrollment period ended, causing them millions in damages.

### CAUSE FIVE – TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACT
### (Against AKOS and GHG)

41. In 2022, Plaintiffs had been contacted by other ACO operators, and had tentatively agreed to join another ACO.

42. Plaintiffs did not join another ACO, and instead joined AKOS/GHG's ACO, based on the fraudulent representations by AKOS.

43. Plaintiffs had told AKOS and GHG of their competing offers to join another ACO.

44. AKOS and GHG made fraudulent representations regarding the ACO they were forming in order to prevent Plaintiffs from forming a relationship with another ACO.

45. Plaintiffs have suffered at least $3 million in damages as a result.

### ATTORNEYS' FEES

46. Plaintiffs demand that all costs and reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies code.

### JURY TRIAL

47. Plaintiffs demand a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants for damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorneys' fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pied or unpled.

Respectfully submitted,

MULLIN HOARD & BROWN, L.L.P.
Richard Biggs, Texas Bar No. 24064899
500 South Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
(806) 372-5050 – Telephone
(806) 372-5086 – Facsimile
rbiggs@mhba.com

/s/      Richard Biggs
          Richard Biggs
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the above and foregoing document was served upon the parties listed below via the efiling system on April 20, 2023.

Jeremi K. Young
905 S. Fillmore, Suite 101
Amarillo, Texas 79101
Email: jyoung@youngfirm.com

Carol C. Lumpkin
K&L Gates, LLP
200 S. Biscayne Blvd., Suite 3900
Miami, Florida 33131

Attorneys for Genuine Health Group, LLC

                                                                                  /s/    *Richard Biggs*
                                                                                       Richard Biggs