IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVSION

| | | |
|---|---|---|
| AMARILLO MEDICAL SPECIALISTS, LLP | § | |
| AMARILLO FAMILY PHYSICIANS, PA and | § | |
| AMARILLO LEGACY MEDICAL ACO, LLC | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:23-CV-00026-Z |
| | § | |
| AKOS MD IPA, LLC, AND | § | |
| GENUINE HEALTH GROUP, LLC | § | |
| | § | |
| Defendants. | § | |
| | § | |
| GENUINE HEALTH GROUP, LLC | § | |
| | § | |
| Third Party Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| MARY BLACK | § | |
| | § | |
| Third Party Defendant. | § | |

**GENUINE HEALTH GROUP, LLC'S**
**MOTION TO STRIKE PLAINTIFFS' DESIGNATED RETAINED EXPERT**

TO THE HONORABLE MAGISTRATE JUDGE:

Defendant Genuine Health Group, LLC ("GHG"), by and through its undersigned counsel, files this Motion to Strike Plaintiffs' Designated Retained Expert. In support, GHG respectfully shows:

**PROCEDURAL BACKGROUND**

1. Plaintiffs filed this case on January 13, 2023. GHG removed it to this Court on February 21, 2023. (ECF 1).

2.      On March 14, 2023, the Court issued its Order to Submit Joint Proposed Scheduling Order and Setting Rule 16 Scheduling Conference, in which the Court directed the parties to confer and prepare a Joint Proposed Scheduling Order, in the form of a signed pleading, to include:

> "A.(4.(c.) for parties seeking affirmative relief to make the expert disclosures required by Rule 26(a)(2) . . . ."

(ECF 10).

3.      Additionally, the Court's Order included provisions regarding any modification to the scheduling order:

### III. MOTIONS TO MODIFY SCHEDULING ORDER

A scheduling order may be modified "only for good cause" and with the judge's consent. *Shepherd on behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 287 (5th Cir. 2019) (quoting Fed. R. Civ. P. 16(b)(4)). **Motions to extend deadlines in the Scheduling Order shall address the following four factors** regarding good cause: (1) the explanation for the party's failure to meet the deadline; (2) the importance of the amendment to the scheduling order; (3) potential prejudice if the court allows the amendment; and (4) the availability of a continuance to remedy such prejudice. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997).

4.      The Court's Order included provisions regarding scheduling orders entered before all parties appear:

### VI. SCHEDULING ORDERS ENTERED BEFORE ALL PARTIES APPEAR

Under Federal Rule of Civil Procedure 16, a "judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared." Fed. R. Civ. P. 16(b)(2). The time within which the Court must issue a scheduling order is based on the appearance of or service on any defendant. In a multi-defendant case, if the Court enters an order relating to scheduling under Rule 16 before all defendants are served or appear, plaintiff(s) or plaintiff's counsel shall provide all later-appearing defendants a copy of such order(s) by the most effective means available.

5.      The parties submitted their original *Joint* Proposed Scheduling Order on April 17, 2023 (ECF 17), proposing an original deadline for parties seeking affirmative relief to make Rule 26(a)(2) expert disclosures by September 18, 2023.

6.      Thereafter, on May 12, 2023, the Court held its in-person Rule 16 Scheduling Conference.

7.      On May 19, 2023, the parties submitted an Amended *Joint* Proposed Scheduling Order (ECF 29) proposing the deadline for parties seeking affirmative relief to make Rule 26(a)(2) expert disclosures by December 15, 2023.

8.      On May 22, 2023, the Court entered its Scheduling Order warning that "[r]ule 16 does not allow a scheduling order to be modified by agreement of the parties, and <u>the requirements in this section apply whether a request or motion for extension or modification is agreed or opposed</u>." The Court explained parties must comply with deadlines unless modified by the Court upon a showing of good cause as required by Fed. R. Civ. P. 16(b).

9.      As part of the original Scheduling Order, parties seeking affirmative relief were required to comply with Fed. R. Civ. P. 26(a)(2)(B) expert disclosure requirements on or before December 15, 2023.

10.     On October 12, 2023, the Court entered an Amended Scheduling Order, reiterating its requirements for Modification of Deadlines. (ECF 51).

11.     Pursuant to the Amended Scheduling Order, the deadline for parties seeking affirmative relief to make expert disclosures was amended to "on or before February 5, 2024." Completion of discovery, including discovery related to experts must occur on or before May 10, 2024.

12.     On January 11, 2024, Plaintiffs served their Expert Designation. *See* Exhibit "A," attached hereto. Notably, even this initial designation was late pursuant to the Amended Scheduling Order which required the designation to be made on or before January 8, 2024.

13.     Almost 45 days have passed since Plaintiffs February 5, 2024 expert disclosure deadline. Plaintiffs have not served the required 26(a)(2)(B) disclosures for its retained expert, Gary Albers, who was designated to testify "as to the nature of ACOs, their legal structure, <u>and the effect of Defendants' [sic] untimely decision to terminate Plaintiffs' ACO participation</u>." [emphasis added].

## ARGUMENT AND AUTHORITIES

### A. The Opinions of and Supporting Facts Relied Upon by Plaintiff's Retained Expert Witness Were Not Timely Disclosed; Therefore, the Expert Should Be Stricken.

14.     Federal Rule of Civil Procedure 26(a)(2)(B) provides:

(B)     *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)     the facts or data considered by the witness in forming them;

(iii)     any exhibits that will be used to summarize or support them;

(iv)     the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)     a statement of the compensation to be paid for the study and testimony in the case.

Pursuant to Rule 26(a)(2)(B) and the Court's Amended Scheduling Order, Plaintiffs were required to make their expert disclosures by February 5, 2024. Defendant's disclosures were to follow in

sequence. As of the filing of this motion, and although Mr. Albers was designated as a retained expert, Plaintiffs have failed to (a) serve their 26(a)(2)(B) expert disclosures; or (b) seek or obtain an extension of the deadline or modification of the scheduling order.

### B. Plaintiffs Cannot Establish Good Cause or Lack of Unfair Surprise or Prejudice.

15.     Fed. R. Civ. P. 16(b) authorizes federal courts to control and expedite the discovery process through a scheduling order. Consistent with the authority vested in the trial court by Rule 16, a district court is vested with broad discretion "to preserve the integrity and purpose" of a pretrial scheduling order. *Barrett v. Atlantic Richfield Co*., 95 F.3d 375, 380 (5th Cir. 1996). "Moreover, a trial court's decision to exclude evidence as a means of enforcing a pretrial order 'must not be disturbed' absent a clear abuse of discretion." G*eiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (*quoting Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971); Fed R. Civ P. 16(f)).

16.     Under Fifth Circuit precedent, four factors are relevant in determining the existence of good cause and whether a district court abuses its discretion in excluding testimony: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony."

### i.     No Explanation for Failure to Comply

17.     Plaintiffs have offered no explanation for their failure to comply with scheduling order. The parties agreed on the proposed deadlines for designation of experts and service of expert reports. The Court entered a scheduling order incorporating the deadlines requested by the

parties. Plaintiffs did not seek or obtain an extension of time from the Court to produce a report, nor did Plaintiffs obtain an agreement from GHG to seek an extension of the deadline.[1]

18.     If a party fails to provide information or identify a witness as required by Rule 26(a)(2)(B), Rule 37(c)(1) provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless that failure was substantially justified or is harmless."

19.     Fed. R. Civ. P. 37(b)(2)(A) provides further authority for excluding expert testimony when a party fails to comply with a discovery order:

> (A)  *For Not Obeying a Discovery Order.* If a party … fails to obey an order to provide or permit discovery, including an order under <u>Rule 26(f)</u> … the court where the action is pending may issue further just orders. They may include the following:
> …
> (ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> …
> (v)   dismissing the action or proceeding in whole or in part;
> (vi)  rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

### ii.      Prejudice to GHG Due to Inability to Designate Experts

20.     GHG has been prejudiced by Plaintiffs' failure to comply with Rule 26(a)(2)(B), the Court's Amended Scheduling Order, and their discovery obligations.

21.     The case has been on file for more than a year. Plaintiffs seek to recover economic damages of "at least $3 million in damages." (ECF 22). Since Plaintiffs' damages are

---

[1] At 1:11 p.m. on February 5, 2024 (the deadline for Plaintiffs' expert disclosures), their counsel sent an email to lead counsel for GHG stating "I'm still waiting to get an expert report in. Would you be willing to extend the deadline for reports by one week (Feb 12). Of course, we would be happy to return the courtesy." *See* Exhibit B. After conferring with his client, on February 8, counsel for GHG responded indicating that GHG would agree to the requested extension, provided that Plaintiffs would provide supplementation of various discovery responses by January 17 and agree to one or more extensions of GHG's expert designation deadlines. Plaintiffs never responded. (*Id.*)

based on revenue received in 2022, all documents and information related to this alleged damage calculation has been exclusively within Plaintiffs' possession and control since at least the date of filing. (*Id*. at ¶ 28). GHG served written discovery seeking information by which to evaluate these alleged damages. However, Plaintiffs' discovery responses were grossly deficient, prohibiting meaningful analysis by GHG.

22.     By letter dated January 17, 2024, GHG sent Plaintiffs a detailed letter (the "Cure Letter") identifying these deficiencies and requesting provision of information that would allow GHG to evaluate Plaintiffs' "claimed damages." (*See* Exhibit C). GHG requested the following information related to Plaintiffs' interrogatory answers:

> 6) Each document and the calculation methodology used by Plaintiffs in itemizing the damages contained in their responses to the Damages Interrogatories, including
>
>    a)   Shared Savings $2,428,131.00;[3]
>
>    b)   APM $301,429.18;
>
>    c)   Wasted CAHP Survey $12,600.00;
>
>    d)   Loss Voluntary Alignment $380,000.00;[4]
>
>    e)   Loss Capitation $4,800,000.00 (gross);[5]

*See* Exhibit D, Plaintiffs' Response to GHG's First Set of Interrogatories to Amarillo Family Physicians, PA. Though documentation of these alleged damages is obtainable only from Plaintiffs, they have provided no supplemental production.

23.     In the Cure Letter, GHG also requested depositions of fact witnesses Mary Jo Zallar and William C. Biggs, M.D., both subsequently designated by Plaintiffs as non-retained expert witnesses, to take place in early March. Plaintiffs have made no response to the Cure Letter, failed to supplement any discovery response, and have provided no deposition dates.

24.      GHG anticipated that, with the provision of Plaintiffs' expert disclosures, due on February 5, and with the additional information requested in its January 17 Cure Letter, it would be in a position to identify and retain one or more of its own experts to evaluate and likely rebut the opinions of Plaintiffs' experts. Because Plaintiffs have wholly failed to respond to the January 17 Cure Letter or provide required expert disclosures, GHG has been denied this opportunity.[2]

25.      The Fifth Circuit has observed:

> Although the degree of prejudice suffered by the plaintiff due to the late designation of an expert would not have been great, a district court still has discretion to control pretrial discovery and sanction a party's failure to follow a scheduling order. [Citation omitted.] Such action is particularly appropriate here, where the [offending parties] have failed to provide an adequate explanation for their failure to identify their expert within the designated timetable.
>
> A continuance might have cured any prejudice arising from the [offending parties'] late designation, but such a remedy would have entailed additional expense to the [other party] and further delayed its day in court. "Moreover, a continuance would not deter future dilatory behavior, nor serve to enforce local rules of court or court imposed scheduling orders." [Citation omitted.]

*1488, Inc. v. Philsec Inv. Corp*. 939 F.2d 1281, 1288-89 (5th Cir. 1991).

26.      The Court ordered Plaintiffs to make expert disclosures by February 5, 2024. This deadline has passed. Plaintiffs designated a retained expert but, because they failed to make required 26(a)(2)(B) disclosures, GHG has been denied the opportunity to evaluate the expert's opinions (and his support for them, if any) and identify, retain, and designate one or more experts of its own.

---

[2] Because so much time has passed since Plaintiffs' expert disclosure deadline and without any attempt by Plaintiffs to seek appropriate relief, GHG suspected either that (a) Plaintiffs' retained expert found no support for their alleged damages and refused to provide an opinion supporting them; or (b) Plaintiffs had made the decision to abandon their meritless claims against GHG. Not until March 14th, during a call initiated by GHG's counsel, did Plaintiffs' counsel express an intention to seek leave to modify the expert disclosure deadline they allowed to pass on February 5.

27.     In addition, as noted above, GHG requested the depositions of fact witnesses (and subsequently designated non-retained experts) Mary Jo Zallar and William C. Biggs, M. D., in mid-January. To date, neither witness has been produced and, because non-retained experts are not required to provide a report under 26(a)(2), GHG has been denied the opportunity to discover their opinions, the basis for them, or whether either witness is qualified to render such opinions.[3] Once such depositions have been conducted, even if the Court strikes Plaintiffs' retained expert, GHG anticipates the need to ask the Court for leave to designate additional experts, either retained, non-retained, or both, to address such opinions. However, as it stands, having been denied the requested discovery and depositions, it has been impossible for GHG to identify and designate appropriate experts.

### iii.     Possibility of Continuance to Cure Prejudice to GHG

28.     Granting a continuance or otherwise permitting Plaintiffs to make a late disclosure of its expert's opinions will only increase the expense to GHG in defending a meritless claim and will not "deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Thomas v. Hunt County*, 2011 U.S. Dist. LEXIS 65873 (citing *Betzel v. State Farm Lloyds*, 480 F.3d 704, 708—09 (5th Cir. 2007) (internal quotation marks omitted) (citation omitted).

### iv.     Importance of the Witness's Testimony

29.      Plaintiffs have not demonstrated the importance of any testimony that may be given by its retained expert. Striking him will not necessarily render Plaintiffs incapable of eliciting expert testimony at trial. Plaintiffs have designated two additional experts, both non-

---

[3] As required by the United States Magistrate Judge's Standing Order Regarding Potential Discovery Disputes (ECF. 9), GHG has conferred and, subject to the trial schedule of Plaintiffs' counsel, hopes to confer again in the next few days concerning Plaintiffs' intentions to provide the supplemental discovery responses and produce the non-retained expert witnesses whose depositions have been requested.

retained employees, who they claim will offer opinions concerning the "effect of Defendants' untimely decision to terminate [Plaintiff] from its ACO," substantially similar to the designation language for Gary Albers. *See* Exhibit A. In this respect, Plaintiffs have designated three experts whose testimony will ostensibly overlap, and the remedy sought by GHG will not be unduly burdensome.[4] *See 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (finding district court's enforcement of pretrial order to exclude untimely designated expert was warranted because it did not leave defendants without expert at trial).

**PRAYER**

Defendant Genuine Health Care, LLC prays that the Court enter an order striking Plaintiffs' designated expert witness Gary Albers due to Plaintiffs' failure to comply with Fed. R. Civ. P. 26(a)(2)(B) prior to the February 5, 2024 deadline imposed by the Court's Amended Scheduling Order.

Respectfully submitted,

YOUNG FIRM, PC

By: /s/ Jeremi K. Young
Jeremi K. Young, TX SBN 24013793
905 S. Fillmore, Suite 101
Amarillo, Texas  79101
Tel:  (806) 331-1800
Fax:  (806) 398-9095
jyoung@youngfirm.com

-        AND -

---

[4] However, GHG expressly reserves the right to challenge the qualifications of either or both non-retained experts after deposing them.

K&L GATES LLP
Carol Lumpkin, FL SBN 797448
Admitted Pro Hac Vice
200 S. Biscayne Blvd., Suite 3900
Miami, Florida 33131
Tel: (305) 539-3300
Fax: (305) 358-7095
Carol.lumpkin@klgates.com

**Attorneys for Defendant**
**Genuine Health Group, LLC**

## CERTIFICATE OF CONFERENCE

I hereby certify that, on the 20th day of March 2024, I conferred with counsel for Plaintiffs, Richard Biggs, via electronic mail. Mr. Biggs indicated that he is opposed to the relief sought in the foregoing motion.

/s/ Jeremi K. Young
Jeremi K. Young

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of March 2024, a true and correct copy of the foregoing was delivered to counsel via electronic mail, authorized by Fed. R. Civ. P. 5(b)(2)(E).

Richard Biggs
MULLIN HOARD & BROWN, L.L.P.
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
E-mail:  rbiggs@mhba.com

Graigory B. Fancher
Austin L. Caldera
BOURLAND, WALL & WENZEL, P.C.
301 Commerce Street, Suite 2500
Fort Worth, Texas 76102-4125
Email: gfancher@bwwlaw.com
        acaldera@bwwlaw.com

By: /s/ Jeremi K. Young
Jeremi K. Young

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVSION**

| | | |
|---|---|---|
| AMARILLO MEDICAL SPECIALISTS, LLP | § | |
| AMARILLO FAMILY PHYSICIANS, LLP and | § | |
| AMARILLO LEGACY MEDICAL ACO, LLC | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:23-CV-00026-Z |
| | § | |
| AKOS MD IPA, LLC, AND | § | |
| GENUINE HEALTH GROUP, LLC | § | |
| | § | |
| Defendants. | § | |
| | § | |
| GENUINE HEALTH GROUP, LLC | § | |
| | § | |
| Third Party Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| MARY BLACK | § | |
| | § | |
| Third Party Defendant | § | |

**PLAINTIFFS' EXPERT DESIGNATIONS**

To:    Defendant Genuine Health Group, LLC via its counsel, Jeremi K. Young, Young Firm
PC, 905 South Fillmore, Suite 101, Amarillo, TX 79101.

Plaintiffs submit their expert designations as follows.

Respectfully submitted,

**MULLIN HOARD & BROWN, L.L.P.**
Richard Biggs, Texas Bar No. 24064899
500 South Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
(806) 372-5050 – Telephone
(806) 372-5086 – Facsimile
rbiggs@mhba.com

/s/      *Richard Biggs*

1

EXHIBIT

A

Richard Biggs

Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January 2024, a true and correct copy of the foregoing Plaintiff's Expert Designations was delivered to counsel via electronic mail.

Jeremi K. Young
905 S. Fillmore, Suite 101
Amarillo, Texas 79101
jyoung@youngfirm.com

Carol C. Lumpkin
K&L Gates, LLP
200 S. Biscayne Blvd., Suite 3900
Miami, Florida 33131
Carol.lumpkin@klgates.com

Attorneys for Genuine Health Group, LLC

*/s/      Richard Biggs*
Richard Biggs

Plaintiffs designate the following as experts:

## RETAINED EXPERTS

1. Gary Albers
   Chief Executive Officer of Imperium Health,
   9510 Ormsby Station Road, Suite 300
   Louisville, KY 40223

   Mr. Albers will testify as to the nature of ACOs, their legal structure, and the effect of

Defendants' untimely decision to terminate Plaintiffs' ACO participation. His CV is available at

https://www.imperiumhealth.com/leadership-team

## NON-RETAINED EXPERTS

2. William Biggs, Amarillo Medical Specialists
   c/o Plaintiff's counsel

   Mr. Biggs will testify as to the structure of AMS' previous ACO, the revenue it earned in

past years and anticipated to earn in future years, the performance of AMS under previous ACO

systems, and the effect of Defendants' untimely decision to terminate AMS from its ACO. Mr.

Biggs' opinions are based upon his education, experience and training, including pleadings and

discovery.

3. Mary Jo Zallar. Amarillo Legacy Medical Aco, LLC
   c/o Plaintiff's counsel

   Ms. Zallar will testify as to the structure of ALMA's previous ACO and its membership,

the revenue it earned and distributed in past years and anticipated to earn and distribute in future

years, the performance of ALMA under previous ACO systems, and the effect of Defendants'

untimely decision to terminate ALMA's members from its ACO. Ms. Zallar's opinions are based

upon his education, experience and training, including pleadings and discovery.

4. Mark Logsdon
   Mullin Hoard & Brown

Mr. Logsdon may offer opinions about reasonable and necessary attorney's fees. Specifically, Mr. Logsdon may offer opinions regarding: (1) the reasonable and necessary attorney's fees incurred by Plaintiffs for the handling of this matter; (2) attorney's fees and hourly fee agreements generally; (3) the custom and practice of attorneys handling matters such as this litigation; (4) the Rules of Professional Conduct pertaining to attorney's fees; and (5) the applicable case law pertaining to attorney's fees and hourly fee agreements. Mr. Logsdon may respond to any testimony offered by any of Defendants' experts within an area of his expertise, including on the reasonableness and necessity of fees incurred. Mr. Logsdon has not yet reviewed detailed statements regarding Plaintiffs' fees and expenses and will have opinions regarding those fees and expenses.

Mr. Logsdon's mental impressions and opinions in this case will include that (1) Plaintiffs' fee agreement is reasonable; (2) the rates and total of such fees are reasonable and the fees were necessarily incurred; (3) the total of such fees is reasonable in relation to the costs of similar professional services performed at similar levels of competence by attorneys of similar experience in the relevant area; and (4) that the amounts charged to Plaintiffs for the legal services rendered were reasonable at the time and place such services were provided. Mr. Logsdon's opinions are expected to be based on the time and labor required and incurred, the attorneys' experience, ability, and reputation, the nature of the employment, the responsibility involved, the novelty and difficulty of the questions involved, the nature and character of the claims asserted, the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer, the fee customarily charged in the locality for similar legal services, the amount involved, and whether the fee is fixed or contingent. Because the work is

4

ongoing in this case, Plaintiff reserves the right to supplement these opinions as the case continues.

Mr. Logsdon's opinions are based upon his education, experience and training, and the case file including all pleadings and discovery.

 **Gmail**

Jeremi Young <jyoung@youngfirm.com>

---

## AMS v. GHG

---

**Richard Biggs** <rbiggs@mhba.com>                                          Mon, Feb 5, 2024 at 1:11 PM
To: Jeremi Young <jyoung@youngfirm.com>

Jeremi,

I'm still waiting to get an expert report in. Would you be willing to extend the deadline for reports by one week (Feb 12). Of course, we would be happy to return the courtesy.

Regards,

**Richard Biggs**
**Partner**
**Mullin Hoard & Brown, LLP**
500 S. Taylor, Suite 800
Amarillo National Bank Plaza II
Amarillo, Texas 79101

**806.372.5050**
**806.372.5086 – fax**

Mailing Address:
P. O. Box 31656
Amarillo, TX 79120-1656

www.mullinhoard.com
rbiggs@mhba.com

This email contains confidential information (including any attachments) belonging to the sender or his client which may be protected from disclosure by the attorney-client privilege, the attorney or core work product immunity, the work product immunity, and/or other privilege or immunity.  This confidential information is intended only for the use of the individuals or entities identified above.  If you are not the intended recipient, you are hereby notified that any use, disclosure, copying, distribution, dissemination, or the taking of any action in reliance on the contents of the emailed information, is strictly prohibited.  If you have received this email in error, please immediately notify the sender by replying to the email or by telephone at 806.372.5050.



**EXHIBIT**

**B**
_____

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Speciali ing in; Security, archiving and compliance. To find out more Click Here.

**Jeremi Young** <jyoung@youngfirm.com>                    Thu, Feb 8, 2024 at 2:22 PM
To: Richard Biggs <rbiggs@mhba.com>
Cc: Sabrina Dubberly <sabrina@youngfirm.com>

Richard,

I heard back from GHG. I have been authorized to agree to the extension you
requested for Plaintiff's expert disclosures provided that:

1. You will agree to provide complete and substantive responses to my January 17,
   2024 letter (as well as dates for the requested depositions in early March) by
   **February 22nd**, which is necessary because my client representative will be
   leaving the Country and we would like to have the additional information before he
   leaves; and
2. You will agree to (a) a two-week extension of GHG's deadline for expert
   designations (from March 5th to March 19th) and expert disclosures (from April 7
   to April 23); and (b) an additional reasonable extension of either or both deadlines
   if needed and timely requested by GHG.

If this is acceptable, will you please prepare an appropriate motion?

We may also want to review the most recent Scheduling Order and evaluate whether to
ask the Court to adjust any other approaching deadlines in light of the modifications
concerning experts. If you agree, please let me know what you may have in mind.

Jeremi K. Young
Young Firm PC
905 South Fillmore, Suite 101
Amarillo, TX 79101
806.331.1800
Youngfirm.com

IMPORTANT NOTICE:  This electronic message contains information that may be privileged and confidential attorney work
product or an attorney/client communication.  This information is intended to be used for the addressee only.  If you are not
the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you
received this message in error, please notify the sender immediately.

On Mon, Feb 5, 2024 at 4:56 PM Richard Biggs <rbiggs@mhba.com> wrote:

> Jeremi,
>
> Where did we land on this?

Thanks,


**Richard Biggs**
**Partner**
**Mullin Hoard & Brown, LLP**

---

**From:** Richard Biggs
**Sent:** Monday, February 5, 2024 1:11 PM
**To:** 'Jeremi Young' <jyoung@youngfirm.com>
**Subject:** AMS v. GHG


Jeremi,


I'm still waiting to get an expert report in. Would you be willing to extend the deadline for reports by one week (Feb 12). Of course, we would be happy to return the courtesy.


Regards,


**Richard Biggs**
**Partner**
**Mullin Hoard & Brown, LLP**
500 S. Taylor, Suite 800
Amarillo National Bank Plaza II
Amarillo, Texas 79101

**806.372.5050**
**806.372.5086 – fax**

Mailing Address:
P. O. Box 31656
Amarillo, TX 79120-1656

www.mullinhoard.com
rbiggs@mhba.com

This email contains confidential information (including any attachments) belonging to the sender or his client which may be protected from disclosure by the attorney-client privilege, the attorney or core work product immunity, the work product immunity, and/or other privilege or immunity.  This confidential information is intended only for the use of the individuals or entities identified above.  If you are not the intended recipient, you are hereby notified that any use, disclosure, copying, distribution, dissemination, or the taking of any action in reliance on the contents of the emailed information, is strictly prohibited.  If you have received this email in error, please immediately notify the sender by replying to the email or by telephone at 806.372.5050.

2828 S. FILLMORE, SUITE 120    Telephone 806.331.1800
Amarillo, Texas 79101    Facsimile 806.398.9095

**W W W . Y O U N G F I R M . C O M**

January 17, 2024

**VIA EMAIL: rbiggs@mhba.com**
Richard Biggs
Mullin Hoard & Brown, LLP
500 S. Taylor, Suite 800
Amarillo National Bank Plaza II
Amarillo, Texas 79101



Dear Richard:

On behalf of Genuine Health Group, LLC ("GHG") I write to request an opportunity to confer regarding the following:

1. Plaintiffs' Objections and Responses to Genuine Health Group LLC's First Requests for Production to Plaintiffs;

2. Plaintiff's Response to GHG's First Set of Interrogatories to Amarillo Family Physicians, PA;

3. ALMA's Response to GHG's First Set of Interrogatories to Amarillo Legacy Medical ACO, LLC;

4. Plaintiff AMS's Response to GHG's First Set of Interrogatories to Amarillo Medical Specialists, LLP; and

5. Plaintiff's Initial Disclosures.

Plaintiffs' disclosures, their responses to GHG's requests for production identified above ("RFP" or "RFPs"), and their interrogatory responses are deficient, which prevents GHG from being able to fully evaluate Plaintiff's claims, including for purposes of potential settlement negotiations.

Pursuant to Judge Reno's Standing Orders entered on March 14, 2023, I hereby request your availability to meet, discuss, and attempt to reach agreement regarding the issues identified below prior to seeking court intervention.

**RFP Responses**

In response to RFPs 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 24, 25, 26, 27, 28, 29, 30, 33, 34, 35, 36, 38, 39, 40, 41, 42, 43, 44, 45, and 46, Plaintiffs have indicated that "responsive, non-privileged documents in their possession" will be produced. For any of the RFPs listed above as to which any Plaintiff has withheld otherwise discoverable information on a claim that it is privileged, please supplement the response to 1) expressly make the claim, 2) describe the nature of the documents, communications, or tangible things not produced or disclosed, and do so in a manner that, without revealing information which is alleged to be privileged or protected, will enable GHG to assess the claim of privilege pursuant to FRPC

Richard Biggs
Mullin Hoard & Brown, LLP
Page 2 of 4

26(b)(5)(A). In addition, please produce any remaining responsive, non-privileged documents in Plaintiffs' possession.

Next, no documents were produced that appear to be responsive to RFP 9, 10,[1] 12, 19, 25, 29, and 37-42. Please let me know when I can expect production of materials that are responsive, but that have not yet been produced.

RFP 31 requests business planning documents for the Plaintiffs, including corporate records and meeting minutes. Particularly as they may relate to Plaintiffs' consideration of the contract with AKOS MD IPA, LLC, with which Plaintiffs contend GHG interfered, these documents are discoverable without the need for a more specific request. Please produce them.

The following RFPs seek information related to Plaintiffs' revenues and expenses with a view toward evaluating their claimed damages:

6 - financial statements for 2019-2023; [2]

8 - revenue for 2019-2023;

10 - ACM Bonuses for 2019-2023;

16 - Fee for Service Revenue for 2021-2023;

27 - documents supporting "damages exceeding $3 million;"

32 - documents evidencing net profit for 2020-2023; and

33 - documents evidencing payments by and between Plaintiffs.

I ask that Plaintiffs supplement their responses and produce all requested information, including, but not limited to documents/data that will allow GHG to ascertain the following:

1) Medicare Part B revenue for primary care services, including Primary Care Qualified Evaluation & Management ("PQEM") claims billed and payments received for 2023;

2) Claimant and Claim Line Feed ("CCLF") data files for 2022 and 2023;

---

[1] Plaintiffs produced an Excel file entitled "Bonuses to AFP from ACO 2020-2023," which purports to list bonuses paid by ALMA to AFP from October 18, 2022 through January 10, 2023.

[2] Plaintiffs have produced only financials for 2022 for ALMA and certain tax return documents for ALMA.

Richard Biggs
Mullin Hoard & Brown, LLP
Page 3 of 4

3) Medicare Shared Savings Program ("MSSP") beneficiaries attributed/assigned to primary care providers employed by or affiliated with Plaintiffs as of December 31, 2022;

4) ACO Reach beneficiaries attributed/assigned to primary care providers employed by or affiliated with Plaintiffs as of January 1, 2024 and April 1, 2024;

5) The Alternative Payment Model ("APM") percentage employed by Plaintiffs in calculating the damages identified in response to Interrogatory Number 8 to ALMA, Interrogatory Number 10 to AFP, and Interrogatory Number 16 to AMS (the "Damages Interrogatories");

6) Each document and the calculation methodology used by Plaintiffs in itemizing the damages contained in their responses to the Damages Interrogatories, including

   a) Shared Savings $2,428,131.00;[3]

   b) APM $301,429.18;

   c) Wasted CAHP Survey $12,600.00;

   d) Loss Voluntary Alignment $380,000.00;[4]

   e) Loss Capitation $4,800,000.00 (gross);[5]

7) Whether Plaintiffs received at least 50% of Medicare Part B payments received by attributed members in 2023; and

8) Whether Plaintiffs directly incurred and paid the cost of a CAHP Survey for 2023.

**Interrogatory Responses and Disclosures**

In their response to interrogatories propounded by GHG seeking "each item of damage for which you make a claim in this action" and an itemization of those damages, each Plaintiff appears to claim that it suffered damages identical in amount and calculation. This is not possible. Please amend the responses to identify and provide a detailed methodology, along with documents supporting the damages claimed by <u>each Plaintiff</u>.

---

[3] Responsive documents should reflect how the Shared Savings loss was calculated, including whether the alleged Shared Savings Loss takes into account all necessary deductions, including deduction of Loss Capitation payments.

[4] Responsive documents should reflect whether the method of alignment was based on patient choice or claim-based.

[5] Responsive documents should include the capitation rate used in such calculation.

Richard Biggs
Mullin Hoard & Brown, LLP
Page 4 of 4

In addition, as you know, the proper measure of damages, if any, for each Plaintiff is not lost gross profit or lost revenue, but lost *net profit*, after deduction of all expenses incurred. *See Motion Med. Techs., L.L.C. v. ThermoTek, Inc*., 875 F.3d 765, 779. In preparation of Plaintiffs' supplemental responses to the Damages Interrogatories, please provide *net* numbers along with the calculation methodology for same.

Finally, in preparing Plaintiffs' Rule 26(a)(1) Initial Disclosures, you copied and pasted largely from GHG's Initial Disclosures, including the title. I recommend that you correct this error to avoid later confusion. More importantly, please supplement Plaintiffs' Disclosures and provide a "computation of each category of damages claimed" and produce or make available for copying "the documents or other evidentiary material . . . on which each computation is based . . . ."

I would appreciate receiving the supplemental discovery information identified above on or before **February 26, 2024**. In anticipation of receiving this information, GHG would like to schedule the depositions of Mary Jo Zallar and William C. Biggs, M.D. Please provide potential dates for these depositions during the first two weeks of March.

### Expert Designations

As you have acknowledged, Plaintiffs' Expert Designations were not served by the deadline required in the Court's Amended Scheduling Order. Please be advised that GHG reserves the right to object to Plaintiffs' untimely designation to include, but not limited to, seeking exclusion of one or more of Plaintiffs' experts.

Thank you for your attention to these matters.

Respectfully,

Jeremi K. Young

cc: Carol Lumpkin: Carol.Lumpkin@klgates.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVSION

| | | |
|---|---|---|
| AMARILLO MEDICAL SPECIALISTS, LLP | § | |
| AMARILLO FAMILY PHYSICIANS, PA and | § | |
| AMARILLO LEGACY MEDICAL ACO, LLC | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 2:23-CV-00026-Z |
| | § | |
| AKOS MD IPA, LLC, AND | § | |
| GENUINE HEALTH GROUP, LLC | § | |
| | § | |
| Defendants. | § | |
| | § | |
| GENUINE HEALTH GROUP, LLC | § | |
| | § | |
| Third Party Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| MARY BLACK | § | |
| | § | |
| Third Party Defendant | § | |

## PLAINTIFFS' RESPONSE TO GHG'S FIRST SET OF
## INTERROGATORIES TO AMARILLO FAMILY PHYSICIANS, PA

To:     Defendant Genuine Health Group, LLC via its counsel, Jeremi K. Young, Young Firm
        PC, 905 South Fillmore, Suite 101, Amarillo, TX 79101.

        Plaintiff Amarillo Family Physicians, PA ("Plaintiff") submits its answers and objections

to Defendant General Health Group, LLC's First Interrogatories.

        Respectfully submitted,

        **MULLIN HOARD & BROWN, L.L.P.**
        Richard Biggs, Texas Bar No. 24064899
        500 South Taylor, Suite 800
        P. O. Box 31656
        Amarillo, Texas 79120-1656
        (806) 372-5050 – Telephone
        (806) 372-5086 – Facsimile

**EXHIBIT**

**D**

rbiggs@mhba.com

/s/      *Richard Biggs*
Richard Biggs

Attorneys for Plaintiffs


**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of December 2023, a true and correct copy of the foregoing Plaintiffs' Response to Defendant GHG's First Set of Interrogatories was delivered to counsel via electronic mail.

Jeremi K. Young
905 S. Fillmore, Suite 101
Amarillo, Texas 79101
jyoung@youngfirm.com

Carol C. Lumpkin
K&L Gates, LLP
200 S. Biscayne Blvd., Suite 3900
Miami, Florida 33131
Carol.lumpkin@klgates.com

Attorneys for Genuine Health Group, LLC

/s/      *Richard Biggs*
Richard Biggs

## RESPONSES TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1.** For AFP, for years 2021-2023, provide the following information:

    a.  Medical Loss Ratio;
    b.  Medicare Risk Adjustment;
    c.  Average HEDIS Score (Healthcare Effectiveness Data and Information Set);
    d.  Number of any current managed care or MSSP/ACO agreements; and
    e.  Performance data for any current risk arrangement.

      **ANSWER:**

    a.  Medical Loss Ratio;
       •  Not available
    b.  Medicare Risk Adjustment;
       •  Not available
    c.  Average HEDIS Score (Healthcare Effectiveness Data and Information Set);
       •  Not available
    d.  Number of any current managed care or MSSP/ACO agreements; and
       •  6 Aetna, Cigna, Blue Cross ERS, Blue Cross Commercial, ALMA MSSP, (2021-2022 only), Wellmed
    e.  Performance data for any current risk arrangement.
       •  Not available

**INTERROGATORY NO. 2.**  Identify each attorney who has represented AFP  since January 1, 2022 to the present. Include in your answer the name of the firm, the time period in which said firm or attorney was employed, and the individual attorneys associated with that firm who provided services. This interrogatory is not intended to seek and does not seek privileged communications.

**ANSWER:**  John Atkins, Underwood Law Firm

**INTERROGATORY NO. 3.**  Identify each accounting firm which has been used by AFP from January 1, 2022 to the present. Include in your answer the name of the firm, the time period in which said firm or accountant or bookkeeper was engaged, and the individuals associated with that firm who provided services. This interrogatory is not intended to seek and does not seek privileged communications.

**ANSWER:**  Hillary Badrow, Brown Graham & Company, PC

**INTERROGATORY NO. 4.** Identify each alleged breach of contract by GHG as asserted in paragraph 30 of your Amended Complaint. For each breach alleged, include:

    a.  A description of each contract in existence which was allegedly breached;
    b.  The date any such contract was allegedly breached;

    c.   The specific act or omission which you contend constituted a breach; and
    d.   The damages which you contend were incurred as a result of such breach.

**ANSWER:** The contract and its breach is described in the Amended Complaint, and AFP incorporates it by reference. Specifically,

From January 1, 2013 until December 2022, Amarillo Medical Specialists, LLC ("AMS") and Amarillo Family Physicians, PA ("AFP**")** were enrolled through the Amarillo Legacy Medical ACO ("ALMA") in the Medicare Shared Savings Program.

On or around June, 2022, Plaintiffs were approached by AKOS MD IPA, LLC ("AKOS"). AKOS promised to administer AMS and AFP's ACO program on terms much more favorable than ALMA was able to provide**.** Additionally, AKOS promised to contract with ALMA so that ALMA would provide support services to AKOS, AMS and AFP that would improve quality and reduce costs.

Once AKOS received interest from Plaintiffs, it immediately represented that it was a subsidiary of GHG and provided documents to support this. For example, on July 26, 2022, AKOS sent its PQEM Codes for the proposed ACO. These codes were on Genuine Health letterhead. Around the same time, Plaintiffs received an email from Gamil Kharfan, Chief Growth Officer of GHG. This email referenced that he "reviewed the historical performance" of AMS and AFP (which they had provided to AKOS), and that GHG wished to partner with Plaintiffs in the planned ACO.

From June until September, 2022, Plaintiffs and Defendants negotiated the terms for Plaintiffs to join Defendants' ACO. As negotiations between Plaintiffs and Defendants progressed, Defendants became more explicit: Plaintiffs were actually joining a GHG ACO.

For example, on July 29, 2022, Defendants wrote Plaintiffs stating:
Just wanted to circle back around to better understand when your group is making a final decision? We at Apricus Health[1] and Genuine Health Direct want your business and are wining to compete for it! Is there anything we can do differently for your group? Any questions we can answer? Can we get on a call?

On August 2, Defendants transmitted a "Shared Savings Visual," drafted by GHG. This document provided a visualization of how the revenue generated under GHG's ACO would be allocated, with GHG receiving 30% of the revenue. Defendants also transmitted a manual of GHG's ACO policies and procedures, a HIPAA Business Associate Agreement with notations that it was still being reviewed by GHG's legal department, and an Amended and Restated Participant Provider Agreement, also undergoing GHG's legal department review. The next day, Defendants' employee Mary Black wrote: "Sean Leimbach, Chief Strategy Officer at Genuine Health Group" wanted to meet.

---

[1]    Apricus Health is a trade name that AKOS operated under.

On August 4, 2022, there was a "Teams" meeting between Plaintiffs and GHG. During this meeting Leimbach made it unequivocally clear that: 1) AKOS was GHG's subsidiary, 2) AKOS, as GHG's subsidiary, was acting as GHG's agent, and 3) ALMA, AMS, and AFP would be joining a GHG ACO. Leimbach and Plaintiffs had approximately three "Teams" or similar videoconference meetings where Leimbach directly informed Plaintiffs that ALMA, AMS, and AFP would be participating in GHG's ACO, which would be managed through its subsidiary and agent, AKOS. During these meetings, Leimbach actively recruited ALMA, AMS, and AFP to join GHG's ACO. These calls were initiated by GHG, and the Teams invite was sent by GHG.

GHG certainly reinforced the impression that AKOS was its subsidiary, and Plaintiffs would be joining a GHG ACO. Leimbach directly informed Plaintiffs that they would be participating in GHG's ACO, which would be managed through its subsidiary, AKOS. Leimbach provided financial forecasts, including documents showing that GHG would receive 30% of the revenue. Leimbach expounded on GHG's Chief Growth Officer's previous "partnership" proposal and actively recruited Plaintiffs to join GHG's ACO. Leimbach reviewed Plaintiffs' medical practices and provided financial models which showed the profitability of Plaintiffs' participation in the GHG ACO. At all times, GHG told Plaintiffs that GHG's approval (rather than AKOS' approval) was needed to join the AKOS/GHG ACO. Ultimately, it was GHG who made substantial revisions to the deal, and GHG who "redlined" the contract that ALMA, AMS, and AFP signed.

On September 2, 2022, Leimbach again met with Plaintiffs over Teams, and offered "confidential" financial projections showing that Plaintiffs would obtain substantially higher reimbursements from CMS under GHG's ACO rather than ALMA. This was the clincher. After reviewing GHG's projections, Plaintiffs promptly agreed to join Defendants' ACO. Defendants wrote back immediately, stating:

> Congratulations for joining the ACO Reach-2023 program with AKOS MD IPA and Genuine Health Direct! We are so excited to have you as a partner going forward and look forward to working with you.

After signing the contract, GHG reaffirmed the existing understanding that it was managing the Plaintiffs' ACO. "Hi Mary Jo, As you know we are a part of Genuine Health and will be using their P&P for ACO Reach which is being updated as we speak."

The truth was the entire program was nothing more than a fraud. AKOS and Genuine Health had no intention of including Plaintiffs in their ACO. Neither AKOS nor GHG intended to perform the contracts which AKOS entered into with Plaintiffs.

As a result of AKOS and GHG's conduct, AMS, AFP and ALMA ACO are not eligible to participate in the CMS ACO program for 2023. In 2022, ALMA received over $2.4 million in shared savings incentives for distribution to its providers. Additionally, by virtue of participation as an 'Advanced Alternative Payment Model' ACO, AMS and AFP collect over $600,000 per year in APM bonuses. Thus, AMS and AFP are likely to be damaged in amounts which exceed $3 million.

**INTERROGATORY NO. 5.** Identify each existing contract with which GHG allegedly interfered as asserted in paragraph 33 of your Amended Complaint. In answering this Interrogatory, identify the term of the contract, the subject matter of the contract and the parties to the contract.

**ANSWER:** Please refer to Response to Request for Production 11.

**INTERROGATORY NO. 6.** Identify the manner in which you contend that GHG interfered with prospective contracts as alleged in Cause Five of your Amended Complaint.

**ANSWER:** GHG induced Plaintiffs into entering contracts with GHG and AKOS which neither party intended to perform. Please refer to response to Interrogatory No. 4.

**INTERROGATORY NO. 7.** Identify each ACO or DCE with which AFP was associated or contracted, in the three (3) years prior to the first contact you received from AKOS MD IPA, LLC.

**ANSWER:** Amarillo Legacy Medical ACO

**INTERROGATORY NO. 8.** Identify the ACO that AFP "tentatively agreed to join," as alleged in paragraph 41 of your Amended Complaint.

**ANSWER:** Catalyst Health Systems, Amarillo Legacy Medical ACO MSSP

**INTERROGATORY NO. 9.** Identify each competing offer AFP had to join another ACO as alleged in paragraph 43 of your Amended Complaint.

**ANSWER:**
Apricus / Akos
Catalyst Health Group
Clover
Lightbeam
Collaborative Health Systems
Amarillo Legacy Medical ACO


**INTERROGATORY NO. 10.** As to each item of damage for which you make a claim in this action, if any, state the following:

     (a)     a description of each item of damage;
     (b)     the dollar amount claimed for each item of damage;
     (c)     the date or dates upon which each item of damage was incurred or accrued;
     (d)     the name(s), address(es) and telephone number(s) of the Person(s) with personal knowledge of each item of damage;
     (e)     a description of the acts or omission that you contend caused each item of damage;
     (f)     a description of the method in which each item of damage was calculated, including accounting for expenses associated with revenue generation, including overhead

allocations; and

(g)     a description of the documents that refer to, substantiate or prove each item of damage.

**ANSWER:**

(a)     Loss of capitation income, shared savings bonus, and APM bonus. Change from APM to MIPS resulting in costs to survey and no preparation for MIPS measures. Inability to participate in MSSP.

(b)     Based on 2022 data: Shared Savings $2,428,131.00, APM $301,429.18, Wasted CAHP Survey $12,600.00, Loss Voluntary Alignment $380,000.00, Loss Capitation $4,800,000.00 (gross)

(c)     January 2023 through December 2023. APM loss will impact 2025.

(d)     William C. Biggs, 1215 S. Coulter #400, Amarillo Texas 79106, 806-358-8331. Mary Jo Zellar, 1301 S. Coulter #410, Amarillo, Texas 79106, 806-584-6274. Amelia Nelson, 1215 S. Coulter #100, Amarillo, Texas 79106, 806-359-4701. Liz Swearingen, 1301 S. Coulter #410, Amarillo, Texas 79106, 806-677-7604.

(e)     Failure to stay in reach and to remain an APM.

(f)     True cost based on 2022 bonuses (shared savings and APM), capitation and voluntary alignment based on 8,000 attributed lives CAHPS Survey. Capitation $50 per pm, Vol. alignment $50 per attributed life.

(g)     See response to request for production Nos. 2 and 8

**INTERROGATORY NO. 11.** Identify every source of revenue for AFP, for the calendar years 2021, 2022 and 2023.

**OBJECTION**: AFP objects as this request is overly broad, unduly burdensome, vague, and virtually impossible to respond to without identifying each patient who has received services by AFP.

**ANSWER:**   Medicare Shared  Savings
APM Bonus
Chronic Care Management Fees (CCM)
ACO Participation Fees ($50 per provider per month)
Cigna – CCM
BCBS PPO – CCM Fees
BCBS ERS – CCM Fees and Shared Savings
Aetna – CCM Fees and Shared Savings

**INTERROGATORY NO. 12.** State the total amount, in dollars, that Amarillo Legacy ACO, LLC paid to AFP for the years 2020, 2021, 2022 and 2023.

**ANSWER:** Please refer to the spreadsheet entitled "Bonuses to AFP from ACO 2020-2023.xlsx"

**INTERROGATORY NO. 13.** Identify each person answering these interrogatories, supplying information, or assisting in any way with the preparation of the answers to these interrogatories.

**ANSWER:**
Mary Jo Zallar
William Biggs MD
Amelia Nelson