IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| AMARILLO MEDICAL SPECIALISTS, LLP, AMARILLO FAMILY PHYSICIANS, PA, and AMARILLO LEGACY MEDICAL ACO, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>AKOS MD IPA, LLC, and GENUINE HEALTH GROUP, LLC,<br><br>    Defendants.<br><br>GENUINE HEALTH GROUP, LLC,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>MARY BLACK,<br><br>    Third Party Defendant. | § § § § § § § § § § § § § § § § § § § § § § § § | 2:23-CV-026-Z-BR |

**MEMORANDUM OPINION AND ORDER WITHDRAWING ORDER TO MOVE FOR DEFAULT AND TERMINATING MOTIONS AS MOOT**

In this contract dispute, a trio of plaintiffs have sued a pair of defendants, one of which has not appeared to defend itself.[1] The live defendant has also brought crossclaims against the non-appearing defendant. The undersigned, charged with pretrial management of the case, ordered parties to move for default. Because that order was an error, for the reasons explained below, it is WITHDRAWN and the responsive motions are TERMINATED as moot.

---

[1] The convoluted procedural history of this case is recounted in greater detail below.

I.     **PROCEDURAL BACKGROUND**

Plaintiffs initiated this action by a petition filed in the 251st District Court of the State of Texas on January 13, 2023. (ECF 1 at 1, 5–10). On February 21, 2023, Defendant Genuine Health Group, LLC ("GHG") removed the action to this federal District Court with the consent of fellow Defendant AKOS MD IPA, LLC ("AKOS"). (*Id.* at 1, 16). Plaintiffs filed their live pleading, Plaintiffs' First Amended Complaint, on April 20, 2023. (ECF 22). On August 2, 2023, GHG filed its crossclaim against AKOS and a third-party complaint against Third Party Defendant Mary Black. (ECF 40 *and* ECF 41).[2] GHG certified that AKOS was served on October 14, 2023. (ECF 53). AKOS has never appeared to defend any of the claims against it.

On September 10, 2024, because AKOS had been in default for greater than ninety days and no party had yet sought entry of default, the undersigned United States Magistrate Judge[3] issued Findings, Conclusions, and Recommendation to Order Plaintiffs and Cross Claimant to Seek Entry of Default and to Move for Default Judgment. (ECF 84); *see* N.D. TEX. CIV. R. 55.1 ("If a defendant has been in default for 90 days, the presiding judge may require the plaintiff to move for entry of a default and a default judgment."). No party objected, and the recommendation was adopted. (ECF 90).

Plaintiffs and GHG each subsequently obtained an entry of default as to AKOS. (ECF 93 *and* ECF 100). Each then moved for default judgment. (ECF 95 *and* ECF 101). The presiding District Judge referred GHG's motion, which did not claim a liquidated sum in damages, to the undersigned for evidentiary hearing. (ECF 97). Then, on November 15, 2024, in response to an unopposed motion by GHG for a temporary stay of proceedings, the undersigned directed the

---

[2] In response to an Order of the Court, GHG amended this pleading February 23, 2024, and that amended document is the live pleading containing GHG's claims. (ECF 57; *see* ECF 56).

[3] This matter was referred to the undersigned by the presiding United States District Judge for pretrial management. (ECF 8).

United States District Clerk to administratively close this case and to terminate all pending motions, which included the two motions for default judgment. (ECF 108). Parties were directed to provide a status update to the Court at an appropriate time and to re-urge any terminated motions as necessary once the case had been re-opened. (*Id.* at 2).

The undersigned ordered the case re-opened on March 3, 2025, and directed the parties to submit proposed dates for a new scheduling order. (ECF 112 *and* ECF 113). In their response, the parties noted the prior motions for default judgment and the Order referring GHG's motion for hearing. (ECF 114 at 4; *see also* ECF 10 at 4 (requiring parties to identify pending matters in their scheduling proposals when a case is opened)). In the subsequent Scheduling Order, the undersigned acknowledged this note from the parties, but instructed that any renewed motion for default would need to be directed to the presiding District Judge. (ECF 115 at 2 n.1).

On May 21, 2025, citing the undersigned's instructions, GHG filed a motion for an evidentiary hearing on its motion for default judgment. (ECF 119 at 1). Because the prior motion had been terminated, however, and no renewed motion had been filed, the undersigned denied the request for hearing. (ECF 120). In that Order, the undersigned "instructed [parties] to refile any default motions if they wish[ed] to obtain a ruling by the Court." (*Id.* at 2). Accordingly, Plaintiffs and GHG filed renewed motions for default judgment on May 22, 2025. (ECF 121 *and* ECF 122). GHG then moved for an evidentiary hearing on its motion. (ECF 123). The presiding District Judge referred both motions to the undersigned for recommendation, and GHG renewed its request for an evidentiary hearing accordingly. (ECF 124 *and* ECF 128).

## II.   DEFAULT JUDGMENTS

By failing to answer, a defaulting defendant admits a plaintiff's well-pleaded allegations. Fed. R. Civ. P. 8(b)(6). As such, the Federal Rules of Civil Procedure allow courts to enter judgments by default against non-appearing defendants. Fed. R. Civ. P. 55(a)–(b). However, unless the damages to be awarded can be mathematically calculated with certainty, the awarding court

must hold an evidentiary hearing, and if a valid right to a jury has been invoked, that evidentiary hearing must be to a jury. *Walker v. Koelzer*, 715 F.Supp. 3d 956, 966 (N.D. Tex. 2024), *and* FED. R. CIV. P. 55(b)(2)(B).

In 1872, the United States Supreme Court ruled on a case involving default judgments. *See generally Frow v. De La Vega*, 82 U.S. 552 (1872). In the lower court, a single plaintiff had brought claims against fourteen defendants, including a claim for conspiracy to defraud. *Id.* at 553. One defendant, Frow, did not timely answer, and the trial court entered default judgment against him on all claims, including conspiracy. *Id.* The case then went to trial, where the other defendants prevailed and the plaintiff's claims were dismissed. *Id.* The Supreme Court took the case to decide whether "the court in such a case as that mentioned could lawfully make a final decree against one defendant separately, on the merits, whilst the cause was proceeding undetermined against the others." *Id.*

The Court answered in the negative, holding that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." *Id.* at 554. The reason was the conflict between the two judgments of the trial court, which held the defaulting defendant to have engaged in a joint conspiracy with his codefendants, but held that his codefendants had not engaged in the joint conspiracy with him. *Id.* The coexistence of these two judgments, according to the Court, was "unseemly and absurd, as well as unauthorized by law." *Id.*

Much more recently, the Fifth Circuit had cause to mention *Frow* and the principle for which it stood. The Circuit Court summarized that principle as follows: "When a case involves multiple defendants, courts may not grant default judgment against one defendant if doing so would conflict with the position taken by another defendant." *Escalante v. Lidge*, 34 F.4th 486, 495 (5th Cir. 2022). Escalante and Lidge were both women who each claimed, over the other's objection, to be the Texas common-law wife of the same man. *Id.* at 489. The federal

courts had the unusual task of deciding their disagreement because the man in question had died in an automotive accident, resulting in a diversity lawsuit against a trucking company, Creekside. *Id.* Both women sought default judgment against the trucking company, but because only one of them could have been the decedent's wife at the time of his death, the trial court granted only Lidge's motion. *Id.* at 490.

Escalante appealed, arguing that both motions should have been granted. *Id.* at 489. Specifically, she argued that the trial court should have considered her pleadings, which the defendant had admitted, separately from Lidge's pleadings, which the defendant had also admitted. *Id.* at 494–95. The Fifth Circuit rejected this argument and affirmed the denial of Escalante's motion because to do otherwise would have resulted in inconsistent judgments as to each plaintiff. *Id.* at 495. In reaching that conclusion, the Court of Appeals remarked that, "If a second defendant had remained to contest Escalante's and Lidge's wrongful-death claims, *Frow* would have precluded granting either woman a default judgment against Creekside." *Id.*

This remark, though dicta, highlights an important point, one also made in *Frow*. If multiple defendants are in a case, and only one of those defendants is in default, the trial court should refrain from issuing a default judgment until it is also prepared to issue judgment as to the live defendants. As the Supreme Court articulated more than 150 years ago:

> The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others.

*Frow*, 82 U.S. at 554. The matter was unusually clear in *Frow*, where the relevant claim against all of the defendants alleged a single joint conspiracy. The situation is the same, however, wherever one factual assertion is used to support claims against multiple defendants; if any defendant contests the assertion, it must be tried as to all of them.

Other Circuit Courts have distilled the same principle from *Frow* more explicitly. For example, in *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, a product distributor sued both a foreign exporter and a domestic importer for breach of contract. 740 F.2d 1499, 1501–05 (11th Cir. 1984). During trial, the exporter affirmatively ceased participation in litigation, so the trial court severed claims against it and issued default judgment on those claims. *Id.* at 1505. The importer proceeded through trial, however, and prevailed based on a jury finding that the distributor had breached the contract in question. *Id.* The Eleventh Circuit vacated the default judgment, citing *Frow* and noting that, even though the distributor had not alleged joint liability of the defendants, it would have been "incongruous and unfair" to sustain default judgment against one of them on claims with factual bases a jury had rejected as to the other defendant. *Id.* at 1512.

Similarly, in *Neilson v. Chang (In re First T.D. & Inv. Inc.)*, a bankruptcy court granted default judgment as to eighty-eight investor defendants, but summary judgment in favor of eighteen defendants who had appeared to defend identical claims. 253 F.3d 520, 524–25 (9th Cir. 2001). On appeal, the Ninth Circuit noted the bankruptcy court's rationale that the defendants in question "were involved in many individual transactions, not simply one transaction with many parties." *Id.* at 532. Despite this factual disjoint, "each transaction . . . followed an identical pattern with almost identical legal documents. The Trustee filed a single complaint against all 132 investors. Most importantly, the central legal issue concerning each transaction was the same." *Id.* Because of these similarities, the Ninth Circuit held "that the bankruptcy court violated the *Frow* principle and abused its discretion" by entering default judgment against some defendants and summary judgment in others' favor. *Id.* at 532–33.

At least one Circuit Court decision, over a dissent, has restricted *Frow* to cases where only joint liability is alleged. *In re Uranium Antitrust Litigation*, 617 F.2d 1248, 1257–58 (7th Cir. 1980) (holding that, where defendants are jointly and severally liable, "different results as to different parties are not logically inconsistent or contradictory," so "Frow does not preclude the entry of

default judgment against a group of nine defaulters prior to adjudication on the merits as to the remaining defendants[.]"). *Accord Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 950–51 (7th Cir. 2020). Even in that case, however, the Seventh Circuit held damages as to the defaulting defendants could not be determined by an evidentiary hearing prior to and separate from the trial on the merits as to the remaining defendants. *Uranium Antitrust*, 617 F.2d at 1261–62.

### III.    ANALYSIS

In the present case, GHG filed an answer to Plaintiffs' live pleading in which it denied most allegations. (ECF 26). Similarly, Third Party Defendant Mary Black filed an answer to GHG's live pleading in which she denies some allegations outright, and asserts a lack of knowledge sufficient to evaluate most of the rest, which has the same effect as a denial. (ECF 61); FED. R. CIV. P. 8(b)(5). Because there are live defendants in this case contesting the facts, default judgment as to AKOS would be premature. The undersigned's original recommendation should have concerned only the entry of default, which has now been resolved both for Plaintiffs' claims and GHG's crossclaims. (ECF 93 *and* ECF 100).

### IV.    CONCLUSION

Accordingly, to the extent the undersigned's May 22, 2025 Order (ECF 120) instructed parties to refile motions for default judgment, that Order is WITHDRAWN. The pending motions (ECF 121 *and* ECF 122) are DENIED as moot. This is not a ruling on the merits of either motion.

IT IS SO ORDERED.

ENTERED July 29, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE