

DEPOSITION
EXHIBIT
40

## AKOS MD IPA, LLC
## ACO REACH MANAGER AGREEMENT

This **MANAGER AGREEMENT** (the "Agreement") is effective as of January 1, 2023 (the "Effective Date"), by and between **AKOS MD IPA, LLC** ("Akos MD IPA, a.k.a. Apricus Health"), and **Amarillo Medical Legacy ACO, LLC** (**AMLA ACO** the "Manager"). Akos MD IPA and the Manager may be referred to individually as a "Party" or collectively as the "Parties."

**WHEREAS** Akos MD IPA desires to retain the Manager to serve Akos MD IPA as an independent manager, and the Manager desires to serve Akos MD IPA as a manager for Medicare beneficiaries ("Members") attributed to participating physicians affiliated with Manager ("Manager Physicians"), upon the terms and conditions set forth herein;

**WHEREAS** the Manager is retained for performing the Services as further described below;

**WHEREAS** the Manager's work as a manager for Akos MD IPA will require that Manager have access to certain confidential information of Akos MD IPA; and

**WHEREAS** the Parties desire to enter into the Agreement to document the terms and conditions of their relationship.

**NOW, THEREFORE,** in consideration of the premises and of the covenants and agreements herein contained, the Parties hereto agree as follows:

1. **Engagement.** Akos MD IPA hereby engages the Manager as an independent contractor and the Manager hereby accepts such engagement as an independent contractor and agrees to render certain services to AMLA ACO Members.

2. **Scope of Agreement.** This Agreement is limited solely and strictly to Akos MD IPA contractual agreement with the Manager to perform the Services in accordance with the terms and conditions of this Agreement. The compensation paid to the Manager is remuneration for specific and actual services rendered by the Manager pursuant to this Agreement.

3. **Duties of the Manager.** During the term of this Agreement, the Manager shall provide the management services set forth in Schedule "A" or as otherwise mutually agreed by the parties, at the direction and request of Akos MD IPA (the "Services"). The Manager shall devote such time and effort to performing such Services as are reasonably required or requested by Akos MD IPA.

4. **Compensation.**

    4.1 **Services.** As compensation for Services provided by Manager in accordance with Section 3 of this Agreement, Manager shall be entitled to:

    a. **Minimum of $5.00 PBPM** for each Amarillo Legacy Medical ACO, ACO Reach Member attributed to Manager Physicians as an advance on the bonus described in 4.1 b below.

    b. A performance bonus equal to **10%** of the Net Shared Savings achieved by Amarillo Legacy Medical ACO attributable to the Members, less the advance described in 4.1 (a). Such payment to be paid by Akos MD IPA and shall not be a deduction incorporated into the calculation of Net Shared Savings.

    *Net Shared Savings* refers to the total shared savings achieved for Amarillo Medical Legacy ACO, ACO Reach Members attributed to Manager and Manager Physicians and received by Akos MD IPA from CMS less an administrative recoupment fee, to offset the administrative costs of running the ACO during that program year, less bonuses, if any, paid under value-

based arrangements with Manager affiliated specialists or ancillary providers and less any payments due CMS or retained by CMS from Akos MD IPA for the applicable performance year.

c. Any overpayment or deficit will be recoverable from future Manager performance bonus payments.

d. Should Akos MD IPA not realize shared savings for any performance year, the loss shall be carried forward to the next performance year and shall be deducted from the calculation of Net shared Saving for the following performance years until repaid. Until such time, no payments will be made to Manager. Notwithstanding the foregoing, the Manager will be entitled to retain a minimum $5.00 PBPM payment as compensation for administrative services included in 4.1 (a) payment above.

**4.2** **Physician Primary Care Capitation (PCC).** Akos MD IPA agrees to pay Manager Physicians an amount equal to the average per beneficiary per month capitation payment paid to Amarillo Legacy Medical ACO's Participating Providers of minimum of **$50.00** PBPM. Upon completion of each performance year Akos MD IPA will review the applicable Manager Physician's performance year claims data and if necessary, make adjustments to such Manager Physicians PBPM for the following performance year. Such annual review shall occur at the end of each performance year of this Agreement.

**4.3** **Physician Shared Savings.** Akos MD IPA agrees to pay Manager Physicians the standard net shared savings rate for all Amarillo Legacy Medical ACO Participating Providers, **70%,** according to Payment provision found in ACO REACH Participant Provider Agreement.

5.   **Term.** The term (the "Term") of this Agreement shall be for 4 years, unless sooner terminated by either Party pursuant to this Agreement.

6.   **Termination.**

   **6.1** **With Cause.** If either Party materially breaches this Agreement (the "Breaching Party"), the other Party (the "Non-Breaching Party") shall have the right to terminate this Agreement by delivery to the Breaching Party of written notice of the alleged breach. The Breaching Party shall have a period of thirty (30) days following receipt of such notice to cure the breach to the reasonable satisfaction of the Non-Breaching Party. If the breach is not cured within such time period, this Agreement shall immediately terminate, except for those provisions herein that survive termination.

   **6.2** **Termination.** Neither party shall terminate this Agreement without cause during the initial 3-year period of the Term of this Agreement. Thereafter, either party may terminate with (60) day prior written notice.

   **6.3** **Effects of Termination.** Upon any Termination, the obligations of the parties hereunder shall cease and Manager and/or Akos MD IPA shall return, within fifteen (15) days, all Confidential Information to respective Party.

7.   **Covenants.**

   **7.1** **Confidential Materials.**

      **7.1.1** **Confidential Information.** Both Parties acknowledge and agree that as a result of this Agreement, the MANAGER may become informed of, and have access to, valuable and confidential information of Akos MD IPA, including, without limitation, (i) member information; (ii) provider information, including but not limited to provider reimbursement rates; (iii) the provisions of this Agreement, including but not limited to reimbursement provisions set forth herein; and (iv) any other information compiled or created by Akos MD IPA, its affiliates and subsidiaries which is proprietary in nature, including payment methodologies, business

methods, trademarks, logos, patents and copyrights (the "Confidential Information"). "Confidential Information" shall not include any information which is in the public domain, provided such information is not in the public domain as a consequence of disclosure by the MANAGER in violation of this Agreement or any other nondisclosure obligation. Accordingly, except as required by law or expressly authorized under this Agreement, the Parties shall not, at any time, either during or subsequent to the Term, use, reveal, report, publish, copy, transcribe, transfer or otherwise disclose to any person, corporation or other entity, any of the Confidential Information without the written consent of Akos MD IPA except as required to perform the Services.

**7.1.2** Given that the Confidential Information of Akos MD IPA, its affiliates and subsidiaries will contain personal health information as defined in HIPAA, the Manager as a condition precedent to the effectiveness of this Agreement, will execute Akos MD IPA standard business associate agreement a copy of which is attached hereto as Exhibit "B."

**7.2** **No Violation.** The Manager agrees that neither it nor its employees or agents will take any action in violation of any applicable state, federal or local laws, rules or regulations in connection with providing or while performing the Services and that it will immediately notify Akos MD IPA of any notice, claim or complaint alleging the Manager's or its employees' or affiliates' violation of any such laws, rules or regulations.

**7.3** **Non-Interference.** Neither party shall, directly or indirectly (either alone or as a partner, joint ventures, member, officer, director, employee, independent contractor, consultant, investor, lender or stockholder of any company, firm, partnership, business organization, person or other entity) recruit, solicit, hire or otherwise seek to induce Physicians, employees, contractors, or referral sources of the other party nor shall Akos MD IPA take any action to have MANAGER Physicians terminate their engagement, relationship or referral relationship with Manager, or to solicit or cause to be interfered with, either directly or indirectly, any contractual arrangements between Manager and its MANAGER Physicians other than as contemplated by Akos MD IPA services to such Manager Physicians and their patients. This provision shall survive for a period of one (1) year post termination of this Agreement.

**8.** **Miscellaneous.**

**8.1** **Independent Contractor.** It is expressly acknowledged by the Parties that the Manager is an independent contractor. The Manager understands and agrees that: (a) Akos MD IPA will not withhold on behalf of the Manager pursuant to this Agreement any sums for income tax, unemployment tax, insurance, social security or any other withholding pursuant to any law or requirement of any governmental body relating to the Manager or make available to the Manager any of the benefits afforded to employees of Akos MD IPA; and (b) all of these payments, withholdings and benefits, if any, are the sole responsibility of the Manager. No Party shall have authorization to enter into contracts or assume any obligations for the other Party or make any warranties or representations on behalf of the other Party unless otherwise authorized in writing by the Party to be bound.

**8.2** **Notices.** All notices, demands or other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed to have been given (a) when delivered personally to the recipient; (b) when sent to the recipient by email during normal business hours of the recipient (if sent after hours, notice will be deemed to have been given on the next Business Day); (c) one (1) Business Day after the date when sent to the recipient by overnight delivery performed by reputable express courier service or (d) three (3) Business Days after the date when mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid. Such notices, demands and other communications shall be sent to the Parties at the addresses indicated below, or to such other address as a party hereto may, from time to time, designate in writing:

If to Akos MD IPA:

    Akos MD IPA, LLC
    16435 N. Scottsdale Rd
    Suite #400
    Scottsdale, AZ 85254

If to Manager:

    Amarillo Legacy Medical ACO, LLC
    1215 Coulter St S.
    Amarillo, TX 79100
    ATTN: William Biggs, MD, CEO

DocuSign Envelope ID: 2504C69F-314C-4849-A579-95B02E335934

9.1 **Governing Law.** This Agreement shall be governed, construed, and enforced pursuant to and in accordance with the laws of the State of Arizona without regard to Arizona laws governing conflicts of laws.

9.2 **Assignment.** No assignment of this Agreement shall be valid without the specific written consent of the other Party.

9.3 **Waiver.** If any Party decides not to terminate this Agreement, even though it has the right to do so in a particular instance, or delays its decision to terminate, such decision shall not be considered a waiver of its right to terminate on a future occasion for the same or any other reason, and any other waivers of the breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or another provision of this Agreement.

9.4 **Severability.** In the event any provision of this Agreement is held to be unenforceable, in whole or in part, for any reason, such unenforceability shall not affect the remainder of this Agreement, which shall otherwise remain in full force and effect and enforceable in accordance with its terms.

9.5 **Counterparts.** This Agreement may be executed in one or more counterparts, including facsimile counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same agreement.

9.6 **Gender; Number; Construction; Headings.** Whenever the context of this Agreement requires, the gender of all words shall include the masculine, feminine and neuter, and the number of all words shall include the singular and plural. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing this Agreement to be drafted. The Manager has read this Agreement in its entirety, understands its contents, and has had the advice of counsel as to the Agreement's meaning and intent. The headings contained in this Agreement are for reference purposes only and shall not affect in any manner or way the meaning or interpretation of this Agreement.

9.7 **Attorneys' Fees and Costs.** In connection with any dispute arising out of or relating to this Agreement, including appellate proceedings, the prevailing party shall be entitled to recover from the non-prevailing Party, and the non-prevailing Party shall pay the prevailing party's reasonable attorneys' fees and costs.

9.8 **Enforcement.** The Manager acknowledges that irreparable injury will result to Akos MD IPA in the event of the Manager's breach of Section 7 of this Agreement, that a material inducement for the Manager's engagement are the covenants set forth in Section 7 of this Agreement, and that monetary damages in an action at law would not provide an adequate remedy in the event of a breach of Section 7 of this Agreement. The Manager further acknowledges and agrees that the covenants contained in Section 7 are necessary for the protection of Akos MD IPA's legitimate business and professional duties, ethical obligations and interests and are reasonable in scope and content. Accordingly, in the event of the Manager's breach of any provision of Section 7 of this Agreement, Section 7 of this Agreement may be enforced by the obtaining of an injunction to restrain the violation thereof by the Manager and all persons acting for the Manager, without the necessity of Akos MD IPA having to prove actual damages or the inadequacy of monetary damages, or without Akos MD IPA having to post a judicial bond. Nothing in this Agreement shall be construed as preventing Akos MD IPA from pursuing any remedy at law or in equity for any breach or threatened breach of this Agreement by the Manager, or any person acting on behalf of the Manager.

9.9 **Jurisdiction; Venue; Inconvenient Forum.** Any suit, action or proceeding with respect to this Agreement shall be brought in federal or state court located in Maricopa County, Arizona, state of Arizona and the Parties to this Agreement accept the exclusive personal jurisdiction of those courts for the purpose of any suit, action or proceeding.

[SIGNATURE PAGE FOLLOWS]

APPX 0266

DocuSign Envelope ID: 2504C69F-314C-4849-A579-95B02E335934

IN WITNESS WHEREOF, the undersigned have executed this Agreement effective as of the Effective Date.

**Akos MD IPA, LLC**

By: _____
      Troy Smith, CEO

Date: _____

**Amarillo Medical Legacy ACO**

By: _*William C. Biggs, MD*_ (DocuSigned by: F02248677385401...)

Name: William C. Biggs, MD

Title: Chief Executive Officer and Medical Director

Date: 9/6/2022

## Schedule A

Manager shall manage Amarillo Legacy Medical ACO Members revenue and cost initiatives with Manager Physicians providing services to Members.

Akos MD IPA will establish Manger Physician benchmarks for select KPIs, which Manager shall help meet or exceed.

Manager shall be responsible for all Physician Engagement related initiatives and education for Manager Physicians.

Manager will support all Amarillo Legacy Medical ACO Members voluntary alignment initiatives.

Additionally, Manager will work with Akos MD IPA to create engagement focused on revenue, quality, and medical cost initiatives based on Akos MD IPA's reporting. Akos MD IPA will provide Manager the monthly reports which include, but are not limited to:

- Attribution List
- PCP Visit – Wellness Exams
- CCM Program Candidates w/enrollment status
- HCC Suspect List
- ER Report
- Post – Discharge Report

## Attachment B

## HIPAA BUSINESS ASSOCIATE AGREEMENT

THIS BUSINESS ASSOCIATE AGREEMENT (the "Agreement") is effective **JANUARY 1, 2023** (the "Effective Date"), between and among **AKOS MD IPA, LLC** ("Business Associate"), and **AMARILLO LEGACY MEDICAL ACO, LLC** ("Covered Entity").

### RECITALS

**WHEREAS**, Covered Entity and Business Associate are parties to an agreement (the "Underlying Agreement" as defined below), pursuant to which Business Associate provides certain services to Covered Entity and, in connection with those services, Covered Entity discloses to Business Associate certain individually identifiable protected health information ("PHI" as defined below) that is subject to protection under the Health Insurance Portability and Accountability Act of 1996, as amended and supplemented from time to time ("HIPAA") and the Health Information Technology for Economic and Clinical Health ("HITECH") Act; and

**WHEREAS**, the parties desire to comply with the HIPAA and HITECH Act Rules for the privacy and security of PHI of patients of Covered Entity.

**NOW THEREFORE**, for and in consideration of the recitals above and the mutual covenants and conditions herein contained, Covered Entity and Business Associate enter into this Agreement to provide a full statement of their respective responsibilities

### ARTICLE 1 - DEFINITIONS

1.1 **Generally.** Unless otherwise provided herein, capitalized terms shall have the same meaning as set forth in the HIPAA regulations, 45 C.F.R. parts 160 and 164.

1.2 **Business Associate.** "Business Associate" shall mean AKOS MD IPA, LLC.

1.3 **Breach.** "Breach" shall mean the unauthorized acquisition, access, use, or disclosure of protected health information that compromises the security or privacy of such information, except where an unauthorized person to whom such information is disclosed would not reasonably have been able to retain such information.

1.4 **Covered Entity.** "Covered Entity" shall mean the ACO Participant and any collaborating entities which provide direct medical care to patients under the definitions of HIPAA and other privacy acts.

1.5 **Designated Record Set.** "Designated Record Set" shall mean a group of medical records maintained by or for a covered entity that is: (i) The medical records and billing records about individuals maintained by or for a covered health care provider, (ii) The enrollment, payment, claims adjudication, and case management record systems maintained by or for a health plan; or (iii) Used in whole or part, by or for the covered entity to make decisions about individuals. For the purposes of this paragraph, the term record means any item, collection or grouping of information that includes protected health information and is maintained, collected, used, or disseminated by or for a covered entity.

1.6 **Disclosure.** "Disclosure" shall mean the release, transfer, provision of, access to, or divulging in any other manner of the information outside the entity holding the information.

1.7 **Electronic Protected Health Information (ePHI).** Electronic Protected Health Information (ePHI) shall have the same meaning as the term Electronic Protected Health Information (ePHI) in 45 C.F.R. § 164.103.

1.8 **HIPAA Rules.** "HIPAA Rules" shall mean the Privacy, Security, Breach Enforcement, and Enforcement Rules at 45 C.F.R., Parts 160 and 164.

DocuSign Envelope ID: 2504C69F-314C-4849-A579-95B02E335934

1.9  **Individual.** "Individual" shall have the same meaning as the term "individual" in 45 C.F.R. § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 C.F.R. § 164.502(g).

1.10 **Privacy Rule.** "Privacy Rule" shall mean the privacy provisions of the Standards for Privacy and Security of Individually Identifiable Health Information at 45 C.F.R. part 160 and part 164, subparts A and E.

1.11 **Protected Health Information or PHI.** The term "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 C.F.R. § 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.

1.12 **Required by Law.** "Required by Law" shall have the same meaning as the term "required by law" in 45 C.F.R. § 164.103.

1.13 **Secretary.** "Secretary" shall mean the Secretary of the Department of Health and Human Services, or his/her designee.

1.14 **Security Incident.** "Security Incident" shall have the same meaning as the term "Security Incident" in 45 C.F.R. § 164.304.

1.15 **Standards for Privacy and Security.** "Standards for Privacy and Security" shall mean the provisions of the Standards for Privacy and Security of Individually Identifiable Health Information at 45 C.F.R. part 160 and part 164, subparts A and E.

1.16 **Underlying Agreement.** Pursuant to Covered Entity's participation in the ACO Realizing Equity, Access, and Community Health (REACH) Model through the Accountable Care Organization operated by Business Associate, Business Associate provides services (the "Services") to Covered Entity that involve the use and disclosure of PHI. Business Associate agrees to use and disclose PHI only as authorized by this Agreement.

1.17 **Use.** With respect to individually identifiable health information, "Use" shall mean the sharing, employment, application, utilization, examination, or analysis of such information within an entity that maintains such information.

## ARTICLE 2 - SCOPE OF USE OF PHI

2.1 **Performance of Agreement.** Business Associate, its employees, agents, and independent contractors (collectively referred to as "Business Associate") may use PHI solely (1) to perform its duties under the Underlying Agreement, (2) as directed by the Covered Entity, (3) as permitted or required by the terms of the Underlying Agreement and this Agreement, and (4) as required by law. All other uses or disclosures not authorized by this Agreement or required by law are prohibited. Business Associate agrees to make uses and disclosures and requests for PHI consistent with Covered Entity's minimum necessary policies and procedures.

2.2 **Safeguards for Protection of PHI.** Business Associate agrees that it will:

   a.  use commercially reasonable efforts to protect and safeguard from any oral and written disclosure all PHI and ePHI, regardless of the type of media on which it is stored (e.g., written or electronic, etc.), with which it may come into contact in accordance with applicable statutes and regulations, including, but not limited to, HIPAA and the HITECH Act;

   b.  implement and maintain administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of the PHI and ePHI that Business Associate creates, receives, maintains, or transmits;

   c.  use appropriate safeguards to prevent use or disclosure of PHI and ePHI other than as permitted by this Agreement or required by law;

    d.    comply, where applicable, to the Security Rule with regard to ePHI; and

    e.    to the extent that Business Associate is to carry out any of Covered Entity's obligations under the Privacy Rule, comply with the requirements of the Privacy Rule applicable to Covered Entity in the performance of such obligations.

2.3 **Reporting of Unauthorized Use.** Business Associate shall promptly report to Covered Entity, in writing, within ten (10) days of discovery, any unauthorized acquisition, access, use or disclosure of PHI in violation of this Agreement or any law, or any Security Incident ("Breach"). Such written notice to Covered Entity shall include the identity of each individual whose PHI was, or was reasonably believed to have been, breached; a brief description of what happened, including the date of the Breach and date of discovery of the Breach; a description of the PHI that was involved in the Breach; any steps the individual(s) should take to protect themselves from potential harm from the Breach; a description of what Business Associateis doing to investigate the breach, mitigate harm to the individual(s) and protect against further Breaches; and contact procedures for individual(s) to ask questions or get additional information. Business Associate shall implement and maintain sanctions against any employee, subcontractor or agent who violates the requirements of this Agreement or the HIPAA or HITECH Act regulations. Business Associate shall, as requested by Covered Entity, take steps to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of PHI by Business Associate in violation of the requirements of this Agreement.

2.4 **Use of Subcontractors.** To the extent Business Associate uses one or more subcontractors or agents to provide services under the Underlying Agreement, and such subcontractors or agents create, receive, transmit or access PHI, Business Associate agrees that it will ensure that each such subcontractor or agent shall agree, in writing, to all of the same restrictions, terms and conditions that apply to Business Associate in this Agreement, including but not limited to implementation of reasonable and appropriate safeguards to protect ePHI.

2.5 **Breach or Misuse of PHI.** Business Associate understands and agrees that any breach of confidentiality or misuse of information found in and obtained from PHI may result in the termination of the Underlying Agreement.

<u>**ARTICLE 3 - AVAILABILITY, AMENDMENT OF PHI**</u>

3.1 **Availability of PHI.** If Business Associate maintains a Designated Record Set, Business Associate agrees to provide access, at the request of Covered Entity, and in the time and manner designated by Covered Entity, to PHI in the Designated Record Set, to Covered Entity or, as directed by Covered Entity, to an Individual in order to meet the requirements of 45 C.F.R.§164.524.

3.2 **Amendments to PHI.** If Business Associate maintains a Designated Record Set, Business Associate agrees to make any amendment(s) to the PHI in a Designated Record Set that the Covered Entity directs or agrees to pursuant to 45 C.F.R. §164.526 at the request of Covered Entity or an Individual, and in the time and manner designated by Covered Entity.

<u>**ARTICLE 4 - ACCOUNTING AND INSPECTIONS**</u>

4.1 **Accounting of Disclosures.** Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. § 164.528.

4.2 **Provide Accounting.** Business Associate agrees to provide to Covered Entity or an Individual, in time and manner designated by Covered Entity, information collected in accordance with Section 4.1 of this Agreement, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 C.F.R. § 164.528.

4.3   **Access by DHHS.** Business Associate shall make its internal ACO Participants, books and records relating to the use and disclosure of PHI received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity available to the Secretary of the Department of Health and Human Services or designee ("DHHS") for purposes of determining Covered Entity's compliance with HIPAA, the HITECH Act and the corresponding privacy and security regulations. Upon Covered Entity's request, Business Associate shall provide Covered Entity with copies of any information it has made available to DHHS under this section of the Agreement.

### ARTICLE 5 - OBLIGATIONS OF COVERED ENTITY

5.1   **Notice of Privacy ACO Participants.** Covered Entity shall provide Business Associate with the notice of privacy ACO Participants that Covered Entity produces in accordance with 45 C.F.R. §164.520, as well as any changes to such notice.

5.2   **Changes in Use of PHI.** Covered Entity shall provide Business Associate with any changes in, or revocation of, permission by Individual to use or disclose PHI, if such changes affect Business Associate's permitted or required uses and disclosures.

5.3   **Restrictions on Use of PHI.** Covered Entity shall notify Business Associate of any restriction to the use or disclosure of PHI that Covered Entity has agreed to in accordance with 45 C.F.R. § 164.522.

### ARTICLE 6 - TERM/TERMINATION

6.1   **Term and Termination.** This Agreement shall terminate when all of the PHI and ePHI provided by Covered Entity to Business Associate or created or received by Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is not feasible to return or destroy the PHI or ePHI, protections are to extend to such information, in accordance with the provisions of this Agreement.

6.2   **Termination After Notice and Right to Cure.** If the Covered Entity reasonably determines that the Business Associate has committed a material breach of this Agreement, Business Associate shall have thirty (30) calendar days, after delivery from Covered Entity of written notice pursuant to Section 7.2, to remedy the breach and provide evidence of cure to the Covered Entity. If such material breach is not cured within that time, Covered Entity may terminate this Agreement or the Underlying Agreement without additional notice to Business Associate. For the purposes of this Agreement, material breach shall include, but not be limited to, improper use or disclosure of PHI or failure to implement protective safeguards or diminution of Business Associates' reported security procedures which are satisfactory to the Covered Entity, as determined by the Covered Entity in its sole discretion.

6.3   **Termination After Repeated Material Breaches.** Covered Entity may terminate this Agreement and the Underlying Agreement without penalty if Business Associate commits repeated material breaches of this Agreement or any provision hereof, irrespective of whether, or how promptly, Business Associate may remedy such violation after being notified of the same. Repeated material breach means more than one material breach of this Agreement.

6.4   **Return and Destruction of PHI.** Within fifteen (15) business days of the expiration or earlier termination of this Agreement or Underlying Agreement for whatever reason, Business Associate agrees that it will return or destroy all PHI, if feasible, received from, or created or received by it on behalf of Covered Entity, that Business Associate maintains in any form, and retain no copies of such information.

6.5   **No Feasible Return and Destruction of PHI.** To the extent such return or destruction of PHI is not feasible, Business Associate shall extend the precautions of this Agreement to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information unfeasible. Business Associate shall remain bound by the provisions of this Agreement, even after termination of this Agreement or the Underlying Agreement until such time as all PHI has been returned or otherwise destroyed as provided in this section.

6.6 **Effect of Termination.** All rights, duties and obligations of Business Associate established in this Agreement shall survive the termination of this Agreement.

### ARTICLE 7 - OTHER PROVISIONS

7.1 **Construction.** This Agreement shall be construed as broadly as necessary to implement and comply with HIPAA and the HITECH Act and the regulations promulgated thereunder. The parties agree that any ambiguity in this Agreement shall be resolved in favor of a meaning that permits Covered Entity to comply with the Standards for Privacy and Security, HIPAA, the HITECH Act and any amendments thereto.

7.2 **Notice.** All notices and other communications required or permitted pursuant to this Agreement shall be in writing, addressed to the party at the address set forth at the end of this Agreement, or to such other address as either party may designate from time to time. All notices and other communications shall be mailed by registered or certified mail, return receipt requested, postage pre-paid, or transmitted by hand delivery or telegram. All notices shall be effective as of the date of delivery of personal notice or on the date of receipt, whichever is applicable.

7.3 **Amendments.** The parties recognize this Agreement may need to be modified from time to time to ensure consistency with amendments to and changes in applicable federal and state laws and regulations, including, but not limited to, HIPAA and the HITECH Act, and/or the ACO Reach Participation Agreement. This Agreement constitutes the entire agreement between the parties with respect to its subject matter. No oral statement or prior written material not specifically mentioned herein shall be of any force or effect and no change in or addition to this Agreement shall be recognized unless evidenced by a writing executed by Covered Entity and Business Associate, such amendment(s) to become effective on the date stipulated therein. The parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Standards for Privacy and Security, HIPAA, the HITECH Act and any amendments thereto.

7.4 **Assignment.** Covered Entity has entered into this Agreement in specific on the expertise and qualifications of Business Associate. Consequently, Business Associate's interest under this Agreement may not be transferred or assigned or assumed by any other person, in whole or in part, without the prior written consent of Covered Entity.

7.5 **Governing Law.** This Agreement has been executed and delivered in, and shall be interpreted, construed, and enforced pursuant to and in accordance with, the laws of the State of Arizona.

7.6 **Headings.** Headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

7.7 **Binding Effect.** This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective permitted successors and assigns.

7.8 **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which shall constitute but one Agreement.

7.9 **Gender and Number.** The use of the masculine, feminine or neuter genders, and the use of the singular and plural, shall not be given an effect of any exclusion or limitation herein. The use of the word "person" or "party" shall mean and include any individual, trust, corporation, partnership or other entity.

7.10 **Priority of Agreement.** If any portion of this Agreement is inconsistent with the terms of the Underlying Agreement, the terms of this Agreement shall prevail. Except as set forth above, the remaining provisions of the Underlying Agreement are to be ratified in their entirety.

7.11 **No Construction Against Drafter.** This Agreement is not to be construed against the drafting party.

DocuSign Envelope ID: 2504C69F-314C-4849-A579-95B02E335934

7.12  **Authority to Contract.** Each party represents and warrants that said party is authorized to enter into this Agreement and to be bound by the terms of it.

7.13  **Arbitration.** Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof, or any other dispute, controversy or claim between any of the parties hereto shall be settled by arbitration in accordance with the Rules of the American Health Lawyers Association then pertaining in Maricopa County, State of Arizona ("AHLA Rules"), and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator shall be selected in the manner provided in the AHLA Rules. The number of arbitrators shall be one (1). The place of arbitration shall be Maricopa County, Arizona. The arbitrator shall be deemed to possess the powers to issue mandatory orders and restraining orders in connection with such arbitration; provided, however, that nothing in this Section 7.13 shall be construed so as to deny any party hereto the right and power to seek and obtain injunctive relief in a court of equity for any breach or threatened breach by any party of any provision contained herein.

7.14  **Submission to Jurisdiction.** Subject to the provisions of Section 7.13 above (so that in the event of any inconsistency between the terms of this Section 7.14 and the terms of Section 7.13 above, the terms of Section 7.13 govern), each of the parties irrevocably and unconditionally: (i) agree that any suit, action, or other legal proceeding arising out of, or relating to, this Agreement shall be brought in the courts of record of the State of Arizona or any other jurisdiction determined by Covered Entity; (ii) consent to the jurisdiction of each such court in any such suit, action, or proceeding; (iii) waive any objection which it may have to the laying of venue of any such suit, action, or proceeding in any such courts; and (iv) agree that service of any court paper may be affected on such party by any manner as may be provided under applicable laws or court rules of Arizona.

**IN WITNESS WHEREOF**, the parties have hereunto set their hands effective the day and year first above written.

| COVERED ENTITY: | BUSINESS ASSOCIATE: |
|---|---|
| AMARILLO LEGACY MEDICAL ACO, LLC | AKOS MD IPA, LLC |
| By: *[signature]* | By: _____ |
| Name: William C. Biggs, CEO | Name: Troy Smith |
| Title: Chief Executive Officer and Medical Director | Title: Chief Executive Officer |
| Date: 6/2/2022 | Date: _____ |

APPX 0274