IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| AMARILLO MEDICAL SPECIALISTS, LLP<br>AMARILLO FAMILY PHYSICIANS, PA and<br>AMARILLO LEGACY MEDICAL ACO, LLC<br><br>Plaintiffs,<br><br>v.<br><br>AKOS MD IPA, LLC, AND<br>GENUINE HEALTH GROUP, LLC<br><br>Defendants,<br><br>GENUINE HEALTH GROUP, LLC<br><br>Defendant/Third-Party Plaintiff,<br><br>v.<br><br>MARY BLACK<br><br>Third-Party Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:23-CV-00026-Z |

**DEFENDANT GENUINE HEALTH GROUP, LLC'S**
**<u>MOTION FOR SANCTIONS</u>**

TO THE HONORABLE COURT:

Defendant Genuine Health Group, LLC ("GHG") submits this Motion for Sanctions against Plaintiffs Amarillo Family Physicians, P.A. ("AFP"), Amarillo Medical Specialists, LLP ("AMS"), and their attorney, Richard Biggs, Esq., under Rule 11 of the Federal Rules of Civil Procedure.

## Appendix

GHG's Motion for Sanctions is accompanied by an appendix, a separate self-contained document, in compliance with Local Rule 7.1(i)

## Introduction

Rule 11 Sanctions are usually reserved for cases where the litigants' conduct requires a deterrent. *McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 449 n.6 (N.D. Tex. 1997) (noting that "the purpose of Rule 11 Sanctions is deterrence…"). By filing and continuing to pursue their claims against GHG, and by submitting a sworn, inaccurate Affidavit by AMS COO Mary Jo Zallar in opposition to GHG's Motion to Dismiss, AFP, AMS, [ECF No. 20 and 20-1] and their counsel certified—falsely—that the factual contentions had evidentiary support or would likely have such support after reasonable investigation or discovery. Fed. R. Civ. P. 11(b). That certification was baseless from the outset. A reasonable pre-filing inquiry would have revealed that GHG had no contract with AFP or AMS, no substantive communications with them, no role in any alleged interference, and no responsibility for the speculative $3.7 million in "damages" AFP claims. Discovery did establish a lack of due diligence in bringing these claims. In addition, there is no explanation for submitting an Affidavit that contains false statements as confirmed by AMS' COO during her deposition.

Recent sworn deposition testimony from AFP's own designated witnesses confirms—beyond dispute—that the allegations against GHG are unsupported and, in several instances, demonstrably false. Despite this, AFP has persisted in litigating. This conduct violates Rule 11(b) and warrants sanctions. *See Cmty. Loan Servicing, LLC v. Gonzalez*, No. 7:21-CV-00132, 2021 WL 12301182, at *7 (S.D. Tex. Aug. 16, 2021) (finding that sanctions are appropriate where a litigant "advances a meritless argument in disregard of… overwhelming contrary evidence.").

Courts have acknowledged that Rule 11 does not prescribe a specific time period in which a sanctions motion must be filed. *U.S. ex rel White v. Apollo Grp., Inc.*, No. EP-04-CA-452-DB, 2006 WL 1042881, at *1 (W.D. Tex. Apr. 17, 2006). At the same time, a party may not unnecessarily delay seeking sanctions but must act promptly upon discovering a basis for doing so. *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988). GHG has done exactly that here: this motion is filed promptly after depositions revealed that AFP's allegations against GHG are wholly unsupported.[1]

## Argument

### A. AFP's Claims Lack Any Factual or Evidentiary Basis

AFP's Complaint makes the following false allegations against GHG:

1. That AFP had contractual relations with GHG or the other Defendant, AKOS. ECF No. 22 at ¶¶ 24-25.
2. That GHG interfered with AFP's contractual or business relationships. ECF No. 22 at ¶ 34.
3. That GHG had substantive dealings or communications with AFP. ECF No. 22 at ¶¶ 15-22.
4. That GHG caused AFP millions of dollars in damages. ECF No. 22 at ¶ 45.

In depositions taken on June 19, 2025, and August 5, 2025, AFP's CEO Amelia Nelson and President, Dr. David Tyson[2]—gave sworn testimony flatly contradicting these allegations:

[1] AFP's President was deposed on August 5, 2025, and the AFP CEO was deposed on June 19, 2025.

[2] On August 10, 2023, Plaintiffs submitted their Rule 26(a)(1) Initial Disclosures identifying David L. Tyson, M.D., President of AFP as the person with knowledge for AFP.

1. No Contract. AFP never executed any contract with GHG or AKOS. Dr. Tyson, AFP's President, confirmed there was no such agreement. *See* **Exhibit 1,** Dr. David L. Tyson Deposition 21:25-22:1-21 at APPX 0004-0005.
2. No Relationship. AFP had no substantive communications with GHG, and no AFP representative authorized anyone to act on AFP's behalf in dealings with GHG. Dr. Tyson further testified he had never heard of GHG prior to this lawsuit and had no communication with GHG. *See* **Ex. 1**, Tyson Depo. 21:10-14 at APPX 0004.
3. No Interference. Dr. Tyson testified he is unaware of any contract with which GHG could have interfered. *See* **Ex. 1,** Tyson Depo. 23:19-36:1-4 at APPX 0006-0019.
4. No Damages. AFP's witness could not explain the origin of Plaintiffs' $3.7 million damages claim and admitted it was wholly unsubstantiated. *See* **Ex. 1**, Tyson Depo. 49:1-50:1-17 at APPX 0020-0021.

Further, AFP is not even a party to any contract it claims GHG interfered with. The only document AFP has identified is an unsigned agreement between AMS and AKOS. AFP's representatives admitted they were "not sure" whether AFP ever had a contract with AKOS, and no evidence has been produced showing AFP had enforceable contract rights. Without a contract, AFP can't plausibly allege tortious interference, and filing such baseless allegations without factual basis violates Rule 11 and should be deterred.

After two years, AFP's complete failure to produce responsive documents confirms the absence of evidentiary support. Despite discovery requests served nearly two years ago, AFP did not produce a single relevant document—not even the contracts it claimed GHG interfered with. AFP's CEO admitted under oath that she "recently had shred [sic] a great deal of stuff," including notes regarding the expected profits from the AKOS agreement. *See* **Exhibit 2,** Amelia Nelson

Deposition 30:5-25 at APPX 0028. This failure to produce responsive materials and the inference to be drawn from potential document destruction underscores that AFP's allegations never had evidentiary support, as Rule 11 requires.

Moreover, AFP's damages claims are unsubstantiated and inconsistent. The Amended Complaint alleged damages of "at least $3 million" (ECF No. 22 ¶¶ 32-34, 38), while later disclosures asserted damages for all Plaintiffs exceeding $8.5 million based on speculative projections. AFP has not produced documents substantiating either figure. Rule 11(b)(3) requires factual contentions to have evidentiary support, and AFP's shifting and unsupported damages theories demonstrate that its claims do not.

The falsity here is not subtle or debatable. Plaintiffs' witnesses admitted, under oath, that the fundamental factual premises of their claims against GHG never existed. Pursuing such claims without a reasonable pre-filing inquiry, and continuing after discovery revealed their falsity, flouts both the letter and spirit of Rule 11.

This is not overzealous advocacy. It is the pursuit of claims with no factual foundation, based solely on unverified third-party statements, without the reasonable investigation the rule requires. Plaintiffs' continued prosecution after the truth was revealed aggravates the violation.

**B. False Affidavit Submitted to the Court**

AFP, AMS, and its counsel compounded their Rule 11 violations by submitting a sworn Affidavit from Mary Jo Zallar in opposition to GHG's Motion to Dismiss. [ECF No. 20 and 20-1] *See Arthur Children's Tr. v. Keim*, 994 F.2d 1390, 1399 (9th Cir. 1993) (holding that "relying on a false or misleading affidavit in responding to a summary judgment motion is an 'improper purpose' under Rule 11."). That Affidavit, presented as evidence to this Court, was materially

false. Ms. Zallar later admitted in her deposition that many of its key statements were false, overstated, or based on language drafted by counsel rather than her own knowledge.

For example, the Affidavit claimed that AKOS "immediately represented that it was a subsidiary of GHG." **Exhibit 3**, Zallar Aff. ¶ 10 at APPX 0032. At deposition, Ms. Zallar conceded that this was not factually correct, that there were no documents showing AKOS ever said such a thing, and that the language was "probably stronger than what it was represented to be." *See* **Exhibit 4,** Mary Jo Zallar Deposition 199:4-200:1-13 at APPX 0044-0045. She acknowledged she had "adopted someone else's words." **Ex. 4,** Zallar Depo. Comp. 200:16-19 at APPX 0045. The same paragraph of her Affidavit further claimed that "AKOS with the approval of GHG, repeatedly represented that it was acting as an agent for GHG and its ACO." **Ex. 3**, Zallar Aff. ¶ 10 at APPX 0032. Under oath, Ms. Zallar admitted that never happened, that it was merely her assumption, and that it was "not a fact, as stated in [her] Affidavit." **Ex. 4,** Zallar Depo. Comp. 203:6-206:1-13 at APPX 0048-0051. She candidly testified that "some of this was drafted for me." **Ex. 4,** Zallar Depo. Comp. 199:23-25 at APPX 0044.

Ms. Zallar's Affidavit also asserted that "Defendants wrote Plaintiffs" on July 29, 2022. **Ex. 3**, Zallar Aff. ¶ 12 at APPX 0032-0033. In reality, as she admitted at deposition, the July 29 email came from AKOS alone—not from GHG. **Ex. 4,** Zallar Depo. Comp. 200:22-201:1-18 at APPX 0045-0046. Similarly, the Affidavit stated that "Defendants sent me a 'Shared Savings Visual'" on August 2, 2022. **Ex. 3**, Zallar Aff. ¶ 14 at APPX 0033. In her deposition, Ms. Zallar conceded that was also false, that no such document was provided until September, and that the document had been provided by AKOS employee Mary Black rather than GHG. **Ex. 4,** Zallar Depo. Comp. 201:22-202:1-12 at APPX 0046-0047.

Perhaps most strikingly, the Affidavit recounted an August 4, 2022, Teams meeting in which GHG's Chief Strategy Officer allegedly told AFP that AKOS was a GHG subsidiary, actively recruited AFP to join a GHG ACO, and promised higher revenues. **Ex. 3**, Zallar Aff. ¶ 19 at APPX 0034. Ms. Zallar admitted none of that was true: there was no Teams meeting on August 4, Mr. Leimbach never told her AKOS was a subsidiary, and the statements about recruitment and revenues were inaccurate. **Ex. 4,** Zallar Depo. Comp. 202:18-203:1-15, 19-23 at APPX 0047-0048, and 204:13-16 at APPX 0049.

Throughout her testimony, Ms. Zallar emphasized that she did not fully understand what she was signing, that portions of the Affidavit "were drafted for me," and that she "wished I had put more of my own words in my Affidavit." **Ex. 4,** Zallar Depo. Comp. 199:23-25 at APPX 0044, and 213:5-9 at APPX 0052. These admissions confirm that the Affidavit, submitted to this Court to avoid dismissal, was not the product of her personal knowledge but of overstatement and carelessness by AFP and its counsel.

Presenting an Affidavit containing such misstatements is precisely the kind of conduct Rule 11 is designed to prevent. *See NRT Texas LLC v. Wilbur*, No. 4:22-CV-02847, 2024 WL 233229, at *5 (S.D. Tex. Jan. 22, 2024) (stating "Rule 11 governs sanctions for false or inaccurate representations in court filings."); *see also O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, No. 88 CIV. 8498 (JSM), 1992 WL 7839, at *5 (S.D.N.Y. Jan. 10, 1992) (holding that filing and relying upon a "demonstrably false affidavit" and failing to conduct "a reasonable investigation into its veracity" warranted Rule 11 sanctions). AFP and its counsel did not conduct the reasonable diligence required before submitting the Affidavit; instead, they presented sworn testimony that their own witness now admits was false. Submitting an Affidavit that their own witness has now disavowed further proves that AFP and its counsel have prosecuted this case

without a factual foundation from the start, and it has forced GHG to expend significant resources rebutting claims built on misrepresentation. Such blatant misconduct is an affront to this Court and warrants sanctions.

**Conclusion and Prayer**

GHG acknowledges that the relief sought in this Motion is extraordinary and is not requested lightly. But Plaintiffs' and their counsel's conduct—filing and persisting in baseless claims against GHG despite knowing the core allegations are false—constitutes an egregious violation of Rule11(b) and warrants an extraordinary response from the Court. Accordingly, GHG requests that the Court impose whatever sanctions it deems appropriate under the circumstances.

Dated: October 2, 2025

Respectfully submitted,

K&L GATES LLP
By: */s/ Carol C. Lumpkin*
Carol Lumpkin, FL SBN 797448
Admitted Pro Hac Vice
200 S. Biscayne Blvd., Suite 3900
Miami, Florida 33131
Tel: (305) 539-3300
Fax: (305) 358-7095
Carol.lumpkin@klgates.com

YOUNG FIRM, PC
Jeremi K. Young, TX SBN 24013793
301 S. Polk, Suite 320
Amarillo, Texas 79101
Tel: (806) 331-1800
Fax: (806) 398-9095
jyoung@youngfirm.com

STONE HILTON
Judd E. Stone II
TX State Bar No. 24076720
600 Congress Ave., Suite 2350
Austin, TX 78701
Phone: (737) 465-3897
judd@stonehilton.com

***Attorneys for***
***Genuine Health Group, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 2nd day of October, 2025, the foregoing document was electronically transmitted to the Clerk of the Court for filing via the Court's ECF System, and service of Notice of Electronic Filing was made to the ECF registrants shown below:

Richard Biggs
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
E-mail: rbiggs@mhba.com

Graigory B. Fancher
Austin L. Caldera
301 Commerce Street, Suite 2500
Fort Worth, Texas 76102-4125
E-mail: gfancher@bwwlaw.com
acaldera@bwwlaw.com

Shawn Twing
Twing Law Group
5005 Lexington Sq.
Amarillo, TX 79119-6576
Email: shawn@twinglawgroup.com

By: /s/ *Carol C. Lumpkin*