IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| AMARILLO MEDICAL SPECIALISTS, LLP, *et al.*, | | |
| Plaintiffs, | | |
| v. | | 2:23-CV-026-Z-BR |
| AKOS MD IPA, LLC, *et al.*, | | |
| Defendants, | | |
| GENUINE HEALTH GROUP, LLC, | | |
| Third-Party Plaintiff, | | |
| v. | | |
| MARY BLACK, | | |
| Third-Party Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Genuine Health Group, LLC's ("GHG") Response to the Court's February 3, 2026 Order and Attached Affidavits (the "GHG Affidavits"), filed February 10, 2026. ECF No. 215. Also before the Court are three Responses and Objections to the GHG Affidavits and the Court's February 3 Order, in which the Court awarded GHG "all reasonable expenses incurred in litigating" its Motion for Sanctions. ECF No. 212 at 26. Mullin, Hoard & Brown, LLP ("MHB") filed the first two on February 17, 2026, objecting to the GHG Affidavits and the Court's February 3 Order, respectively. ECF Nos. 222, 224. Richard Biggs filed the third on February 24, 2026, objecting to the GHG Affidavits only. ECF No. 230. GHG replied to these filings on March 3 and March 10, 2026, defending its request for $411,689.36 in attorney's fees and expenses. ECF Nos. 239, 241, 248.

The Court **AWARDS** GHG $25,000. Mr. Biggs alone is liable for this award.

BACKGROUND

## I. Procedural History

The parties are familiar with the conduct that culminated in this Court's February 3 Order. *See* ECF No. 212 at 2–10 (describing the underlying facts). In summary, Plaintiffs brought this action in Texas state court in January 2023. *See* ECF No. 1. GHG was served with a citation and Plaintiffs' Original Petition on January 23, 2023. *See id.* at 1. GHG then removed to this Court on February 21, 2023, and moved to dismiss this case about a month later, on March 30, 2023. *See* ECF No. 11. Counsel for Plaintiffs, Richard Biggs, filed an affidavit to defeat GHG's motion to dismiss. *See* ECF No. 20-1. Relying on Mr. Biggs's affidavit, the Court denied GHG's motion, allowing this case to proceed to more than two years of protracted discovery. *See* ECF No. 37.

That affidavit turned out to be materially false. For example, the affidavit swore that "GHG 'unequivocally' and 'immediately' represented to Plaintiffs that AKOS was a GHG subsidiary." ECF No. 212 at 19. The same witness later testified that this didn't happen, and that much of the rest of her affidavit was false, too. *See id.* at 9 ("That's also untrue, correct?" "Yes."); *id.* at 7 (admitting that no one used the word "subsidiary"). Yet Mr. Biggs repeated the affidavit's core false assertions across "three years of Plaintiffs' briefing." *Id.* at 22; *see also* FED. R. CIV. P. 11(b) (an attorney may violate Rule 11 by "later advocating" a pleading, not only by initially signing it).

To sort truth from fiction, the Court held a hearing on GHG's Motion for Sanctions on December 5, 2025. At the hearing, Mr. Biggs refused to admit error. *See* ECF No. 212 at 19 ("[T]here is nothing in Ms. Zallar's affidavit that is false." (quoting ECF No. 206 at 26)); *id.* ("[E]verything in [Ms. Zallar's] affidavit is verified by other witness testimony and other documentary evidence." (quoting ECF No. 206 at 29)); *id.* ("What ultimately she landed on

was all correct." (quoting ECF No. 206 at 27)). He never "retracted or modified any of Plaintiffs' claims since filing the Affidavit in April 2023" and was "intransigent" when the Court questioned him about the affidavit's "obvious distortions." ECF No. 212 at 19. The Court also found that Mr. Biggs was "complicit" in helping one of his witnesses avoid a deposition, "dodg[ing] court orders for as long as possible" until the magistrate judge was forced to extend this case's discovery deadline and supervise the deposition in her own chambers. *Id.* at 20–22 ("In my 22 years of experience as a lawyer, an AUSA, and now a judge, I don't know that I've seen a magistrate judge present at a deposition. So how did we get to that point?" (quoting ECF No. 206 at 114)). This "deposition dodge" occurred on the final day of discovery and came on the heels of "numerous missed deadlines by the Plaintiffs." *Id.* at 20–21; *see also id.* at 21 (discussing Plaintiffs' "failure to timely designate an expert, failure to disclose the expert's opinions, [and] missed disclosure deadlines," among other discovery abuses).

As lead (and sole) counsel for Plaintiffs, Mr. Biggs should have had every incentive to promptly complete discovery. But this unmotivated prosecution was part of a pattern that Plaintiffs have displayed from the outset. For example, Plaintiffs sued AKOS for breach of contract, but they "never produced conclusive evidence of said 'contract' in the three-plus years since filing suit." ECF No. 212 at 5; *see also* ECF No. 182 at 2 (admitting that "Plaintiffs cannot locate their copy of the Participation Agreement"); ECF No. 182 at 4 ("AFP has clearly executed the Participation Agreement which it now cannot find.").

Even worse, there was a "consistent pattern across Plaintiffs' briefing" that intentionally conflated GHG with its Co-Defendant, AKOS MD IPA LLC ("AKOS"), when the two entities had little direct contact. *Id.* at 24; *see also, e.g.*, ECF No. 182 at 2 ("AFP executed a contract with AKOS/GHG . . . ."); ECF No. 182 at 3 (claiming that an employee of Plaintiffs "testified that they had an agreement with AKOS/GHG"); ECF No. 165 at 16 (referring to

"the AKOS/GHG ACO"). Mr. Biggs engaged in this "sleight of hand" because AKOS is judgment-proof. *Id.* at 25. Thus, any hope of recovery depended on misattributing AKOS's actions to GHG.

The Court found Mr. Biggs's behavior sanctionable under Rule 11 and the "authority 'inherent in all courts' to sanction the attorneys who appear before them." ECF No. 212 at 13 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *id.* at 25 (finding Mr. Biggs's conduct to be a "bad-faith abuse of the litigation process").[1] The Court accordingly granted GHG's Motion for Sanctions and dismissed the case, with the amount of fees to be determined by separate order. *See id.* at 26; ECF No. 214 at 1 (ordering GHG to "submit an attorney's fees and expenses affidavit" within one week).

The Court is loath to impose sanctions, either on attorneys or the parties they represent. Accordingly, it did not come to this decision lightly. *See Greinstein v. Granite Servs. Int'l, Inc.*, No. 2:18-CV-208, 2020 WL 10934898, at *4 (N.D. Tex. Aug. 25, 2020) (Kacsmaryk, J.) ("[C]ounsel should understand that 'the Court is very loath to impose sanctions on attorneys and that sanctions are a very difficult thing for judges to determine whether to employ.'" (quoting *Heller v. City of Dall.*, 303 F.R.D. 466, 493 (N.D. Tex. 2014) (Horan, M.J.))).

The Court has never issued a sanction like this before. Before the February 3 Order, the Court had issued thirty-six orders containing the word "sanction" or any variant of that term. A plurality of these were related to repeat prisoner litigation. *See, e.g.*, *Arebalo v. Thornberry*, No. 2:16-CV-228, 2020 WL 247472, at *2 (N.D. Tex. Jan. 16, 2020). Still others

---

[1] In its Motion for Sanctions, GHG did not address whether it had complied with Rule 11(c)(2)'s safe harbor requirement. The Court accordingly ordered supplemental briefing. *See* ECF No. 210. GHG then confirmed that it "fully complied" with Rule 11 before filing its Motion for Sanctions. ECF No. 211 at 1; *see also id.* at 2 ("On September 9, 2025, GHG, through its counsel, served Plaintiff's counsel with a written 'Notice and Safe Harbor letter pursuant to Rule 11' as well as a copy of the proposed Motion for Sanctions."). Mr. Biggs did not respond to the safe harbor letter or withdraw the challenged pleadings, so GHG filed its Motion for Sanctions on October 2, 2025. ECF No. 175. The Court held a hearing on the Motion for Sanctions on December 5, 2025. *See* ECF Nos. 204, 206.

involved sanctions under other federal rules, such as Rule 37(b). *See, e.g.*, *Monden v. Consol. Nuclear Sec. LLC*, No. 2:22-CV-004, 2023 WL 2249186, at *3 (N.D. Tex. Feb. 9, 2023) ("[T]he Court declines the opportunity to impose sanctions under Rule 37(b)(2).").

In the Rule 11 context, the Court has contemplated imposing sanctions on only a handful of occasions; much more often, the Court summarily denies motions for Rule 11 sanctions. *See, e.g.*, *Herring Bank, Tr. for Bondholders of First Baptist Church of Sterling v. First Baptist Church of Sterling, Inc.*, No. 2:24-CV-246, 2025 WL 1254387, at *1 (N.D. Tex. Mar. 12, 2025). In the only cases where the Court *has* imposed Rule 11 sanctions, it did so because—as in this case—the offending party was an attorney who repeatedly acted in bad faith. *See, e.g.*, *Murphy v. Hernandez*, No. 2:20-CV-282, 2021 WL 3773583, at *9 (N.D. Tex. Aug. 24, 2021) (describing "unprofessional" and "harass[ing]" pleading practices designed to "waste[] a defendant's time and money and this Court's resources by filing a claim in violation of Rule 11"); *see also id.*, at *10 ("Plaintiff's conduct, both in the courthouse and out, is unbecoming of a member of the legal profession."); *Murphy v. Moore*, No. 2:20-CV-190, 2021 WL 1819698 (N.D. Tex. May 6, 2021) (prior Rule 11 sanction of same attorney), *aff'd sub nom., Murphy v. Dalton*, No. 21-10589, 2021 WL 4998684 (5th Cir. Oct. 27, 2021).

And the Court is lenient when counsel take responsibility for their mistakes. For example, in a criminal proceeding, the Court ordered an attorney to show cause why he should not be disciplined for "a series of misstated and misfiled documents," including a motion to substitute counsel that contained a false certificate of conference. Order to Show Cause, *United States v. Mandujano*, 2:20-CR-015(2), ECF No. 1378 at 1 (N.D. Tex. Feb. 22, 2021). That attorney's response began: "I have been negligent in tasks I have delegated to my staff." Brief in Response, *Mandujano*, 2:20-CR-015(2), ECF No. 1388 at 1 (N.D. Tex. Feb. 24, 2021). The response contained headings such as "My Continued Errors and Negligence"

and "My Apology." *Id.* at 1–2. This attorney concluded by writing, "I frankly do not have a valid reason why I should not be disciplined . . . . All I can do is assure the Court that I know what went wrong, I understand and appreciate how important it is to fix these problems, and I have a simple but effective plan to fix it which is already being implemented." *Id.* at 5. This attorney adhered to a simple but praiseworthy formula: He admitted his mistakes and promised to do better moving forward. The Court accordingly declined to take disciplinary action.[2]

Before dismissing this case, the Court considered and rejected other sanctions. *See* ECF No. 212 at 25 ("[D]ismissal of Plaintiffs' Amended Complaint is 'the only effective, appropriate sanction to remedy this misconduct and to deter future similar misconduct.'" (quoting *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 80 (5th Cir. 2011)). The Court opted for dismissal because it did not believe Mr. Biggs would "course correct for the remainder of the case" if it imposed a less severe sanction. *Greinstein*, 2020 WL 13801694, at *1. Any doubt about that evaporated at the December 5 hearing, where Mr. Biggs repeated many of the affidavit's "obvious distortions" and "obstinately persisted in claiming that 'there is nothing in the affidavit that is false.'" ECF No. 212 at 19 (quoting ECF No. 206 at 26 (citation modified)). Mr. Biggs's behavior at that hearing was the antithesis of taking responsibility for one's mistakes. In fact, he doubled down, refusing to countenance that he may have done anything wrong at all—even at a hearing whose primary focus was whether he had engaged in sanctionable conduct. Accordingly, the Court found that the "strong medicine" of dismissal

---

[2] *See also, e.g.*, *Greinstein v. FieldCore Servs. Sols., LLC*, No. 2:18-CV-208, 2020 WL 13801694, at *1 (N.D. Tex. Oct. 29, 2020) ("Even though Plaintiff['s] counsel offered, at best, a questionable answer to that show cause order, the Court did not impose sanctions because it believed Plaintiff's counsel was sufficiently chastened and would course correct for the remainder of the case." (internal citation omitted)); *El Bey v. Dominguez*, No. 2:20-CV-073, 2020 WL 7658087, at *1 (N.D. Tex. Nov. 24, 2020) (noting that "the Court denied ten defendants' motion to impose Rule 11 sanctions because it wished to show leniency toward the pro se Plaintiffs," who then "responded by harassing the Court about that very order," but still declining to impose sanctions).

was warranted, while recognizing that dismissal is an "'extreme sanction.'" ECF No. 212 at

18 (quoting *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 845 (S.D. Tex. 2016) (Costa,

J.)).[3]

This case represents the most severe sanction this Court has ever issued. Even so,

when the Court sanctioned Mr. Biggs, his misconduct seemed to be limited to Rule 11

violations and other court-related unethical behavior.

It was not.

### II. MHB's Response

As noted above, the Court's February 3 Order asked MHB to file a brief explaining

whether this case "presents 'exceptional circumstances' such that only Mr. Biggs should be

sanctioned under Rule 11." ECF No. 212 at 17 (quoting FED. R. CIV. P. 11(c)(1)). MHB filed

its brief (the "MHB Brief") and corresponding appendix on February 17, 2026. *See* ECF Nos.

224, 225.

The MHB Brief argues that "[e]xceptional circumstances exist" because "Mr. Biggs

conducted the case in an unusual manner outside the ordinary course, rendering the

connection between MHB and this case tenuous." ECF No. 224 at 9. MHB notes that "Mr.

Biggs took this case for his father's medical practice" but "did not follow MHB's mandatory

client acceptance procedures." *Id.* For example, he ran an incomplete conflicts check that "did

not include all of the defendants, omitting GHG altogether, such that MHB was not even

aware that GHG was involved in this lawsuit." *Id.* This is despite the fact that GHG is the

only relevant defendant; Plaintiffs knew AKOS was judgment-proof before this case was filed.

*See* ECF No. 156-2 at 1 (December 21, 2022 email from Dr. William Biggs stating that

---

[3] The Fifth Circuit has upheld dismissals-as-sanction for far less. *See, e.g.*, *Pennie v. Giorgi for Dall. Morning News*, 841 F. App'x 655, 660 (5th Cir. 2021) (Jones, J.) (affirming dismissal for failure to obtain local counsel); *but cf. Deras v. Johnson & Johnson Servs., Inc.*, No. 25-10977, --- F.4th ----, 2026 WL 668528 (5th Cir. Mar. 10, 2026).

Plaintiffs "have been severely harmed by the actions of AKOS/Apricus who appear to have fraudulently presented themselves as capable of executing the ACO Reach program with us. We may seek damages from them, but if they are insolvent there may be little to no recovery"). *Compare* ECF No. 1 at 8–9 (naming GHG as a defendant as to tortious interference only, with three other claims brought against AKOS alone), *with* ECF No. 22 (amending complaint to add GHG as a co-defendant as to three additional causes of action).

Mr. Biggs also failed to open a new matter in MHB's billing system. ECF No. 224 at 9. "Instead, he billed his time to an old, already opened matter," seemingly to avoid alerting his colleagues to this case's existence. *Id.*; *see also id.* ("To complete a New Matter Data Sheet, not only must the lawyer completing the form sign it, but also two additional MHB partners must sign it before a new matter can be officially opened."); ECF No. 225 at 5 ("Mr. Biggs stored documents in the file of, and billed from, an old matter number that already existed for a prior representation of one of the Plaintiffs, Amarillo Medical Specialists, LLP.").

"Mr. Biggs' 'off the books' conduct of this case continued with his billing practices (or lack thereof)." ECF No. 225 at 6. For example, he "failed to keep track of his time spent on the matter since at least 2024, and no bills were sent to the client" in 2025 or 2026. ECF No. 224 at 9. He "only recorded 5.4 hours of time to the billing number he used for this matter (and even some of those entries do not appear to be related to the above-referenced case) since he sent that last bill more than 13 months ago." ECF No. 225 at 6. MHB argues that these "failures to follow MHB protocols and procedures seem to reflect Mr. Biggs' treatment of this matter as a personal representation he was conducting for his father outside the firm's established processes." ECF No. 224 at 9. MHB says this shows that Mr. Biggs treated this case "as an 'off-the-books,' 'favor for Dad' matter handled on his own." *Id.*

It appears Mr. Biggs intentionally concealed the nature of this case from his colleagues. MHB writes that he "did not consult with any other MHB lawyers with regard to

the Zallar Affidavit, the motion to dismiss in response to which it was filed, the motion for sanctions, the response, or the hearing held thereon."[4] ECF No. 224 at 10; *see also* ECF No. 225 at 6 ("Mr. Biggs did not inform anyone at the firm about the filing of GHG's Motion for Sanctions, his response to that motion, the hearing on the motion, the posthearing briefs, or—most tellingly of all—the Court's Order imposing sanctions.").

Doubling down on his irresponsible behavior, Mr. Biggs "did not bring the sanctions order to MHB's attention when it was issued." ECF No. 224 at 10. "Instead, MHB learned of the Court's sanctions order when a lawyer from another local firm sent the order to another MHB partner, apparently on the assumption that Mr. Biggs was unlikely to share this information with the firm on his own." *Id.* at 10–11 (internal citation omitted); *see also* ECF No. 225 at 6 ("[N]o other lawyer or employee at MHB learned about the existence of the court's order until two days after the Court issued it, when a lawyer at another firm sent another partner at MHB a copy of the order." (internal citation omitted)). That local attorney turned out to be right: Mr. Biggs had more than forty-eight hours in which to inform MHB about the Order, but he chose not to. Mr. Biggs resigned from employment with MHB the next day, "at the firm's request." ECF No. 224 at 4 n.1.

In sum, prior to MHB's Brief, the Court had no reason to suspect that Mr. Biggs was litigating this case without his firm's knowledge. The truth is far worse: he deliberately concealed this case's existence from his firm by manipulating MHB's internal systems. He continued to hide this case from his firm after the Court imposed sanctions. And his cover-

---

[4] Only one other MHB attorney participated in this case: Mark Logsdon, a partner at MHB. *See* ECF No. 224 at 10; ECF No. 225 at 9–10. Mr. Logsdon "spent six hours" reviewing filings in the case as an expert on attorneys' fees, and "his work was limited to a single day—February 5, 2024." ECF No. 224 at 10. MHB avers that "[n]othing about the materials he reviewed gave him reason to question whether Mr. Biggs had opened the matter in compliance with MHB's protocols and procedures or to go back and re-review the conflicts check conducted at the case's inception to verify that it included all parties." *Id.* "After February 5, 2024, neither Mr. Logsdon nor any other MHB lawyer provided further substantive work in connection with the case." *Id.*

9

up might have gone on indefinitely had "a lawyer at another firm [not] sent another partner at MHB a copy" of the Order. ECF No. 225 at 6.

This questionable behavior is nothing new. It is the way Mr. Biggs litigated this case from the outset.

### III. MHB's Objection and the Biggs Objection

Only MHB contested the February 3 Order itself. Without first seeking leave, Mr. Biggs and Plaintiffs filed an unsolicited Joint Objection (the "Biggs Objection") to the GHG Affidavits three weeks after the Court issued the February 3 Order. ECF No. 230. The Biggs Objection focused on the GHG Affidavits only and did not discuss the February 3 Order. *See id.* MHB—also without leave—filed its own Objection (the "MHB Objection") in conjunction with its Brief responding to the February 3 Order. ECF No. 222. GHG replied to the MHB and Biggs Objections on March 3 and 10, 2026, respectively. ECF Nos. 241, 248. GHG requested, and the Court granted, GHG leave to respond to each Objection. *See* ECF Nos. 227, 238. Because Mr. Biggs and Plaintiffs filed the Biggs Objection after taking "no action in this case for three weeks" and without first seeking leave, the Court granted GHG two weeks to file its Reply, the standard amount of time allowed for replies in this District. ECF No. 238 at 2–3; *see also* N.D. TEX. LOC. R. 7.1(f).

To be clear, no party besides GHG requested leave for any of these filings. Nor did they address the authority, if any, that justified filing them without permission in a closed case. Nonetheless, in the interest of fairness to all parties, the Court has considered each of these unsolicited filings.

### LEGAL STANDARD

Courts "may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for" litigating a Rule 11 motion for sanctions. FED. R. CIV. P. 11(c)(2). "Reasonable expenses" are limited to "expenses and attorney's fees incurred in presenting or

opposing the motion." *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (quoting FED. R. CIV. P. 11(c)(1)(A) (1993)). "Motions for sanctions 'must be served under Rule 5' and 'must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.'" ECF No. 210 at 2 (quoting FED. R. CIV. P. 11(c)(2)). "This 'safe harbor' provision in Rule 11 is a mandatory prerequisite for a Rule 11 motion." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 388 (5th Cir. 2022) (citing *Elliott*, 64 F.3d at 216). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." FED. R. CIV. P. 11(c)(1); *see also id.* advisory committee's notes to 1993 amendments ("[I]t is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency.").

Even when a higher fee award may be "reasonable," Rule 11 requires all sanctions to be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4); *see also id.* (authorizing awards of "part or all" of the movant's "reasonable attorney's fees"). This means an award of all reasonable fees may exceed what "suffices to deter." In such a situation, a court must limit its final fee award to an amount that will discourage similar conduct in the future, and no more. *See id.* advisory committee's notes to 1993 amendments ("The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons."); *id.* ("[T]he purpose of Rule 11 sanctions is to deter rather than to compensate . . . ."); *Port Drum Co. v. Umphrey*, 852 F.2d 148, 152 (5th Cir. 1988) ("[T]he rule's primary purpose is to discourage groundless proceedings rather than to compensate wronged parties . . . .");

11

*Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988) (en banc) ("[T]he imposition

of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule . . . ."

(emphasis omitted) (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987))).

"[T]he sanction imposed should be the least severe sanction *adequate to the purpose of Rule

11*." *Thomas*, 836 F.2d at 878 (emphasis added); *cf. Harmony Drilling Co. v. Kreutter*, 846

F.2d 17, 19 (5th Cir. 1988) ("*Thomas* does not require that the 'least severe sanction' be

imposed, rather that the 'least severe sanction adequate to serve the purpose' of Rule 11 be

imposed."); *Ferrara v. Swonke*, No. 25-50272, 2025 WL 2256905, at *3 n.11 (5th Cir. Aug. 7,

2025) (district courts must "impose the least severe sanction adequate" (quoting *Mendoza v.

Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993))).

## ANALYSIS

The Court first determines that it has jurisdiction over this fee award despite the

parties' notices of appeal. Turning to the merits, the Court addresses whether MHB should

be held jointly liable for Mr. Biggs's conduct, concluding that exceptional circumstances exist

that absolve MHB of liability. The Court then parses the GHG Affidavits, and the MHB and

Biggs Objections, to determine which fees GHG reasonably incurred in litigating its Motion

for Sanctions. Lastly, the Court considers what amount of attorney's fees will suffice to deter

similar misconduct in the future.

## I. Jurisdiction

"Jurisdiction comes first." *In re GenOn Mid-Atl. Dev., L.L.C.*, 42 F.4th 523 (5th Cir.

2022) (Smith, J.) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

Accordingly, the Court must first decide whether it still has jurisdiction to issue its final fee

determination after the parties filed notices of appeal. *See generally In re Ft. Wor. Chamber

of Com.*, 100 F.4th 528, 536 (5th Cir. 2024) ("The filing of a timely and sufficient notice of

appeal transfers jurisdiction over matters involved in the appeal from the district court to the court of appeals. The district court is divested of jurisdiction to take any action with regard to the matter except in aid of the appeal."); *see also id.* at 538 (Oldham, J., concurring) (noting that "[u]nder the 'one-court-at-a-time rule,' a notice of appeal generally transfers the case to [the appellate court] until [it is sent] back to the district court"). But a notice of appeal divests the lower court of jurisdiction only as to the aspects of the case involved in the appeal: "Although appeals transfer jurisdiction from the district court to the appellate court concerning 'those aspects of the case involved in the appeal,' the district court is nonetheless free to adjudicate matters that are not involved in that appeal." *Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 908 (5th Cir. 2011) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). The reason for this rule is to prevent trial and appellate courts from "attempt[ing] to assert jurisdiction over a case simultaneously." *Griggs*, 459 U.S. at 58.

The Court retains jurisdiction to issue this fee award for two reasons: First, Mr. Biggs's Notice of Appeal states that "any award of fees will be appealed" separately. ECF No. 246 at 2. Accordingly, he hasn't yet appealed this Court's decision to impose Rule 11 sanctions, so the fee award is not a "matter[] involved in [his] appeal." *In re Ft. Wor.*, 100 F.4th at 536; *see also, e.g.*, *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) ("An appeal . . . 'divests the district court of its control over those aspects of the case involved in the appeal.'" (quoting *Griggs,* 459 U.S. at 58)). Because the Court finds that Mr. Biggs alone should be liable for attorney's fees, any statements to the contrary in MHB's or Plaintiffs' notices of appeal fail for lack of standing.

Second, even if Mr. Biggs *had* appealed from the part of the February 3 Order awarding GHG attorney's fees, such an appeal would be futile because that aspect of the Order was not final for appellate purposes. *See, e.g.*, *S. Travel Club, Inc. v. Carnival Air Lines,*

13

*Inc.*, 986 F.2d 125, 131 (5th Cir. 1993) (dismissing appeal from attorney's fees award that appealing party "consolidated with an appeal from a final judgment" because "an order awarding attorney's fees or costs is not reviewable on appeal until the award is reduced to a sum certain"); *Pechon v. Louisiana Dep't of Health & Hosps.*, 368 F. App'x 606, 610–611 (5th Cir. 2010) (dismissing for lack of jurisdiction "the portion of Pechon's appeal challenging the imposition of attorney's fees" because "an order imposing attorney's fees that leaves 'for a later determination the amount' is not a 'final order' for purposes of appellate review.'" (quoting *Williams v. Ezell*, 531 F.2d 1261, 1263 (5th Cir.1976))); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 826 (5th Cir. 1990) ("Because a judgment is not final until both liability and damages are determined, a judgment awarding an unspecified amount of attorney's fees is interlocutory in nature."). Thus, this Court's dismissal of Plaintiffs' Amended Complaint and its reprimand of Mr. Biggs was final, but the attorney's fees award was not. Any appeal from that aspect of the February 3 Order was therefore premature. However, the fee award remains appealable, as Mr. Biggs's "appellate timetable" did not begin to run until "the award [was] reduced to a sum certain"—in other words, today. *S. Travel Club*, 986 F.2d at 131; *see also Dardar v. Lafourche Realty Co.*, 849 F.2d 955, 957 (5th Cir. 1988) ("Denials and awards of attorney's fees may be appealed separately as final orders after a final determination of liability on the merits.").

A final note on jurisdiction: The Court intended to issue this Order well before the parties' thirty-day appeal deadline. On that timeline, the preceding discussion of finality would have been irrelevant, as the attorney's fees award would also have been final before Mr. Biggs's appeal deadline. However, the Court was forced to delay issuing this Order because Mr. Biggs and Plaintiffs filed their unsolicited Objection on February 24, 2026, just nine days before their March 5 appeal deadline. They did not seek court approval before doing so, did not state why they waited three weeks before filing the Objection, and failed to discuss

14

whether the Objection was properly or timely filed. This necessitated giving GHG an opportunity to respond, which pushed the close of briefing to March 10 rather than February 17. *See* ECF No. 238 at 2 ("The Court did not invite this filing from Mr. Biggs and Plaintiffs, and the Objection did not address whether they had the authority to file it. The Court also set strict deadlines for the filings it *did* solicit—seven days for GHG, and fourteen days for [MHB]."); *see also id.* ("Contrast Mr. Biggs's actions with those of GHG, who sought leave to file their attorney's fees affidavits out of time after missing the deadline by a mere five minutes."). That jurisdiction needs to be addressed at all is yet "another example of the carelessness" and disregard for court orders "that led the Court to sanction Mr. Biggs in the first place." *Id.*

## II. Joint Liability of MHB

The Court requested only one filing from MHB: a brief or notice explaining whether "this case presents the kind of exceptional circumstances contemplated by Rule 11(c)." ECF No. 212 at 17 (internal marks omitted). This means MHB properly filed one part of one of its two filings: Part I of its Brief Addressing Order Imposing Sanctions. *See* ECF No. 224 at 8–13. The Court did not grant MHB leave to file Part II, which constitutes the bulk of its brief and argues that sanctions should not be imposed at all. *See id.* at 13–23. Nor did the Court ask MHB for its views on the reasonableness of GHG's attorney's fees. *See* ECF No. 222; *see also generally United States v. Early*, 27 F.3d 140, 142 (5th Cir. 1994) (post-judgment filing was "meaningless, unauthorized motion" district court lacked jurisdiction to consider); *Whitehead v. Netflix*, No. 1:17-CV-225, 2017 WL 4508960, *1 (W.D. La. June 29, 2017) ("Because this case is closed, no more documents except those regarding the appeal may be filed in it."); *Patra v. Schlumberger Tech. Corp.*, No. 24-20104, 2024 WL 4057578, *1 (5th Cir.

15

Sept. 5, 2024) (district court "correct to strike" filing in closed case where party failed to proceed through a recognized post-judgment mechanism, such as Rule 59 or 60).

Nonetheless, to ensure that all parties receive a full hearing, the Court has considered MHB's unsolicited filings. First, however, the Court turns to whether MHB should be held jointly liable for Mr. Biggs's conduct. The Court finds that it should not.

### A. Exceptional Circumstances Under Rule 11(c)(1)

The "case law explaining the parameters of exceptional circumstances" is "sparse." ECF No. 224 at 5 (internal quotation marks omitted). For instance, the Fifth Circuit does not appear to have addressed this aspect of Rule 11. Several district courts within the Fifth Circuit have, but they tend to offer only a cursory discussion before finding that exceptional circumstances were not present. *See, e.g.*, *Billups v. Louisville Mun. Sch. Dist.*, No. 1:24-CV-074, 2025 WL 3691871, at *7 (N.D. Miss. Dec. 19, 2025) (stating only that "[t]he Court does not find any exceptional circumstances that warrant the Firm's exemption from being held jointly responsible for the Rule 11 violations"); *Grace v. State Farm Fire & Cas. Co.*, No. 1:22-CV-3704, 2023 WL 4722731, at *1 (W.D. La. July 24, 2023) ("There is no basis in the record to suggest exceptional circumstances that would relieve the firm of joint responsibility . . . ."). Accordingly, the Court interprets Rule 11's exceptional circumstances provision from first principles.

This much is clear: In 1993, Rule 11 was amended to provide that a law firm must generally "be held jointly responsible for a violation committed by its partner, associate, or employee." FED. R. CIV. P. 11(c)(1). "With this provision the 1993 amendments specifically departed from *Pavelic & LeFlore v. Marvel Entertainment Group*, in which the Supreme Court held that a law firm may not be sanctioned under Rule 11 for a violation by one of its attorneys." *Rentz v. Dynasty Apparel Indus.*, 556 F.3d 389, 396 (6th Cir. 2009) (citing 493 U.S. 120, 126–27 (1989)). The *Rentz* court further notes that the 1993 amendments were an

attempt to restore common-law principles of agency to the exceptional-circumstances determination. *See id.*; *see also* FED. R. CIV. P. 11 advisory committee's notes to 1993 amendments ("[I]t is appropriate that the law firm ordinarily be viewed as jointly responsible [for its attorney's Rule 11 violations] under established principles of agency.").

At common law, an employer was vicariously liable only for "acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 286 (2003) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998)); *see also Winship v. Bank of United States*, 30 U.S. (5 Pet.) 529, 561 (1831) ("The power of an agent is limited by the authority given him; and if he transcends that authority, the act cannot affect his principal, he acts no longer as an agent. *The same principle applies to partners.* One binds the others, so far only as he is the agent of the others." (emphasis added)). The Second Restatement of Agency explains that the "[c]onduct of a servant is within the scope of employment if, but only if, it is of the kind he is employed to perform; it occurs substantially within the authorized time and space limits; and it is actuated, at least in part, by a purpose to serve the master." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 349 n.10 (5th Cir. 2013) (quoting RESTATEMENT (SECOND) OF AGENCY § 228 (A.L.I. 1958) (citation modified)). By contrast, conduct is "not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.*

Thus, since 1993, there has been a clear presumption in favor of law firm joint responsibility. But the "exceptional circumstances" provision remains in the Rule to act as an escape valve in situations where, at common law, an employer would not have been vicariously liable for the employee's actions.

Turning to the Rule itself, Rule 11 does not define exceptional circumstances. *See Rentz*, 556 F.3d at 396 ("[N]either the text of the rule nor the advisory committee notes shed light on what constitutes 'exceptional circumstances.'"). If a statute or rule does not define one of its terms, courts "construe it 'in accordance with [its] ordinary meaning.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014) (quoting *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013)). "Exceptional" means what it sounds like: "uncommon," "rare," "not ordinary," "out of the ordinary course," "unusual," or "special." *Id.* at 553–54 (citations omitted); *see also id.* at 554 ("We hold that an 'exceptional' case is simply one that stands out from others . . . ."); *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant*, 771 F.2d 521, 526 (D.C. Cir. 1985) (R. Ginsburg, J., joined by Scalia, J.) (interpreting "exceptional" in the Lanham Act's fee-shifting provision to mean "uncommon" or "not run-of-the-mill"). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 572 U.S. at 554.

*Rentz v. Dynasty Apparel Industries* appears to be the only circuit-level decision to offer an extended discussion of the term before affirming a trial court that found exceptional circumstances were present. There, the Sixth Circuit found no abuse of discretion where the district court declined to hold a small law firm jointly responsible because there was no evidence the firm's lead partner "had any contact with the *Rentz* case or was involved in either a supervisory or managerial capacity" until "well after the sanctionable conduct occurred." 556 F.3d at 397. "Instead, there was a general understanding among the three attorneys that [the sanctioned lawyers] would continue to maintain sole responsibility for the *Rentz* case when they joined" the firm. *Id.* The court found that the case was "solely the responsibility" of the sanctioned attorneys rather than a joint project of the firm. *Id.* Court

filings also "did not identify [one of the sanctioned attorneys] as a member" of his firm. *Id.*
Instead, "the only evident connection" between the firm and the case "was the appearance of
the firm's name on the letterhead of correspondence." *Id.*

The Court finds that exceptional circumstances exist here. While Mr. Biggs has
implied from the outset that MHB knew he was litigating this case, this is the only fact that
favors holding MHB jointly responsible. For example, the signature block in Plaintiffs'
original state-court petition prominently features his former firm's name:

of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable
and just, as provided by Chapter 38 of the Texas Civil Practice and Remedies code.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that the
Defendants be cited to appear and answer herein, and that upon a final hearing of the cause,
judgment be entered for the Plaintiffs against Defendants for damages requested hereinabove in
an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment
and postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and
such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pied
or unpled.

Respectfully submitted,

MULLIN HOARD & BROWN, L.L.P.
Richard Biggs, Texas Bar No. 24064899
500 South Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
(806) 372-5050 – Telephone
(806) 372-5086 – Facsimile
rbiggs@mhba.com

/s      Richard Biggs
        Richard Biggs
        Attorneys for Plaintiffs

ECF No. 1 at 10. Even this, however, doesn't show that MHB knew about this case—Mr.
Biggs was free to include whatever he liked in his signature block. And everything else about
how Mr. Biggs handled this case favors holding him alone liable for his actions.

For one, Mr. Biggs purportedly concealed this case's existence from his colleagues. He billed his time to an old matter to avoid complying with MHB's "mandatory client acceptance procedures." ECF No. 224 at 9. He "stored documents in the file" of that case instead of creating a new case file. ECF No. 225 at 5. He omitted GHG from the firm's required conflicts check, despite GHG being the only relevant defendant. He failed to track his time billed and had not billed his father's medical practice since "December of 2024." *Id.* at 6. He "did not inform anyone at the firm about" GHG's Rule 11 safe harbor letter, "the filing of GHG's Motion for Sanctions, his response to that motion, the hearing on the motion, [or] the posthearing briefs." *Id.* And when the Court sanctioned him on February 3, he declined to share the Order with his colleagues for more than two days. MHB learned about the February 3 Order only because "a lawyer from another local firm sent the order to another MHB partner, apparently on the assumption that Mr. Biggs was unlikely to share this information with the firm on his own." ECF No. 224 at 10–11. MHB then promptly asked Mr. Biggs to resign. It also matters that Mr. Biggs was suing AKOS and GHG on behalf of his own father's medical practice. This highly unusual posture favors finding that this case is the exceptional one that departs from "the ordinary course." *Octane Fitness*, 572 U.S. at 553.

Common-law principles of agency confirm this conclusion. Mr. Biggs's conduct falls squarely within one of the Second Restatement's exceptions for vicarious liability: Employers are not responsible for their employee's acts if they are "far beyond the authorized time or space limits." RESTATEMENT (SECOND) OF AGENCY § 228 (A.L.I. 1958). By actively evading MHB's internal safeguards, Mr. Biggs was acting outside the range of activities MHB had implicitly authorized him to undertake. MHB does not say outright that, had they known about this case, they would not have allowed Mr. Biggs to litigate it in the way he did. But that's the upshot of their entire brief—they couldn't argue that exceptional circumstances

20

exist if they would have approved of Mr. Biggs's conduct. Presumably they would *not* have approved of it; no reputable law firm could have.

Pushing back, GHG argues that other MHB employees were aware of this case's existence, principally Mark Logsdon. GHG argues Mr. Logsdon should have been alerted to Mr. Biggs's improper handling of this case because the pleadings he reviewed show that Plaintiffs "misrepresent[ed]" key facts, advanced "critically misleading" views of the record, and were "not forthcoming" with the Court. ECF No. 239 at 5–6. But this is fairly standard language for briefs, if a bit overwrought. Certainly Mr. Logsdon's single-day review of a few pleadings, with an eye to attorney's fees only, was not enough to put him on notice that Mr. Biggs had committed repeated Rule 11 violations and engaged in other unethical behavior.

GHG also directs the Court to ECF filing notices on which other MHB employees were copied. But as GHG concedes, "these three employees do not appear to be lawyers." ECF No. 239 at 7. While it may be "difficult to imagine that they would've communicated to no one else at MHB that sanctions were being sought in a case being handled by a partner who was one of their supervisors," non-lawyers must not be held to the same standard as attorneys. *Id.* At a minimum, this Court cannot hold that these non-attorneys had an affirmative duty to report Mr. Biggs's misconduct based on their receipt of a few emails.

GHG further writes that "[s]ix lengthy depositions were taken at MHB's offices over four separate days." ECF No. 239 at 7. "For each deposition, a court reporter was present in person, as was a videographer." *Id.* at 8. The conference room the parties used "is adjacent to the firm's reception area, where a receptionist is present, and Mr. Biggs's legal assistant has a desk in close proximity." *Id.* "With so many people coming and going for the various depositions and announcing to the receptionist why they were there," GHG contends, "it is unfathomable that other MHB employees were entirely in the dark about this high stakes and contentious lawsuit that spanned years." *Id.* at 8–9. All true. But as already noted,

because Mr. Biggs circumvented MHB's internal protocols, his colleagues likely believed these depositions were related to the already-approved older matter to which he was billing his time. Law firm offices host depositions all the time. The occurrence of a few more in the MHB reception area is not enough to put Mr. Biggs's colleagues on notice of his misconduct.

Lastly, quoting from an outdated edition of the Texas Disciplinary Rules of Professional Conduct, GHG argues MHB's internal protocols are insufficient. Rule 5.01 provides that a "lawyer who individually or together with other lawyers possesses managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to these Rules."[5] The comments to the 1989 Rule elaborate on this requirement:

> Paragraph (a) requires lawyers with managerial authority within a firm to make reasonable efforts to establish internal policies and procedures designed to provide reasonable assurance that all lawyers in the firm will conform to these Rules. Such policies and procedures include those designed to detect and resolve conflicts of interest, identify dates by which actions must be taken in pending matters, account for client funds and property, and ensure that inexperienced lawyers are properly supervised.

1989 Rule cmt. 1. The current version of Rule 5.01 is much more lenient, subjecting a supervising attorney to liability only when he "orders, encourages, or knowingly permits the conduct involved," or "with knowledge of the other lawyer's violation of these rules knowingly fails to take reasonable remedial action to avoid or mitigate the consequences of the other lawyer's violation." TEX. DISCIPLINARY R. PROF'L CONDUCT R. 5.01 (2022). Mr. Mullin and other MHB attorneys are not subject to discipline under Rule 5.01 as written today, since they lacked *actual* knowledge of Mr. Biggs's violations. Even under the older version GHG cites, MHB made "reasonable efforts to establish internal policies and procedures designed

---

[5] TEX. CTR. FOR LEGAL ETHICS, TEX. DISCIPLINARY R. PROF'L CONDUCT R. 5.01 (1989) [hereinafter 1989 Rule], https://www.legalethicstexas.com/resources/rules/texas-disciplinary-rules-of-professional-conduct/responsibilities-of-a-partner-or-supervisory-lawyer/ [https://perma.cc/BWC6-MTCE].

to provide reasonable assurance that all lawyers in the firm will conform to these Rules," including the new matter approval process and other safeguards the Rule specifically contemplates. 1989 Rule. It is not MHB's fault that Mr. Biggs intentionally skirted those safeguards to prevent his colleagues from learning about this case.

In sum, exceptional circumstances exist here because Mr. Biggs not only litigated this case outside his former firm's established procedures—he sidestepped those procedures to prevent his firm from learning about the case at all. Accordingly, Mr. Biggs alone is liable for the sanctions imposed in the Court's February 3 Order.

### B. MHB's Arguments Against the February 3 Order

In Part II of its Brief, MHB asks the Court to "vacate the sanctions imposed" in the February 3 Order. ECF No. 224 at 24. MHB presents two arguments: (1) sanctions are inappropriate because "Mr. Biggs performed a reasonable investigation of the facts asserted in Ms. Zallar's Affidavit" and his conduct therefore did not violate Rule 11; and (2) "GHG is barred from moving for sanctions" based on estoppel and timeliness. *Id.* at 16, 21–24.

MHB advances these arguments only insofar as the Court's February 3 Order implicates MHB. *See* ECF No. 224 at 6 ("[I]mposing sanctions on MHB *as a firm* without affording it a meaningful opportunity to be heard on whether sanctions should be imposed at all would deprive MHB of due process." (emphasis added)); *id.* at 13 ("Two arguments not presented by Mr. Biggs preclude the imposition of sanctions *against the firm*." (emphasis added)); *id.* at 6 ("MHB submits that these two arguments would defeat imposition of sanctions *against the firm* under Rule 11(c)(1) and due process." (emphasis added)); *id.* ("[B]ecause it is inappropriate to impose sanctions at all, sanctions should not be imposed *on the firm*." (emphasis added)); *id.* at 5 ("[E]xceptional circumstances militate against imposing the sanctions assessed against Mr. Biggs *on the firm*." (emphasis added)). Because the Court

has found that MHB is not jointly liable for the sanctions imposed in the February 3 Order, MHB lacks standing to challenge it. And Mr. Biggs's own Objection takes issue with only GHG's requested fees, not the Court's February 3 Order. *See* ECF No. 230 at 1 (noting that the Biggs Objection "expressly incorporate[s]" only "the arguments raised in [MHB's] Objection" without mentioning or citing to MHB's Brief). Lastly, to the extent MHB asks the Court to reconsider its final judgment in its entirety to avoid being held liable for monetary sanctions, it was required to comply with Rules 59 and 60. MHB cites neither rule in its Brief, even though the Fifth Circuit has held that parties must proceed through these rules in closed cases rather than simply filing a new motion. *See Patra*, 2024 WL 4057578, at *1 (district court "correct to strike" filing in closed case where party did not proceed through a recognized post-judgment mechanism).

Part II of MHB's Brief stumbles at the threshold several times over. Consequently, the Court does not address the arguments MHB raises against the February 3 Order in full.[6] Even so, the Court offers four points of clarification as to the February 3 Order, which the Court expressly incorporates into this Order.

First, as noted above, MHB is wrong to suggest that the Rule 11 sanction was premised solely on the initial filing of the Zallar affidavit. To the contrary, the Court

---

[6] After the February 3 Order, the Fifth Circuit decided *Boudy v. McComb Sch. Dist.*, No. 24-60386, 2026 WL 507784, at *6 (5th Cir. Feb. 24, 2026). *Boudy* appears to say the Fifth Circuit "cannot affirm a dismissal unless . . . the record reveals that the district court employed lesser sanctions prior to dismissal . . . that in fact proved to be futile." That passage selectively quotes the case it cites for that proposition, *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513 (5th Cir. 1985). *Callip* said "we cannot affirm a dismissal unless the district court expressly considered alternative sanctions and determined that they would not be sufficient to prompt diligent prosecution *or* the record reveals that the district court employed lesser sanctions prior to dismissal (assuming that plaintiff was capable of performing them) that in fact proved to be futile." 757 F.2d at 1521 (emphasis added). In omitting the first part of that disjunction, *Boudy* distorts what *Callip* actually held.

Besides, *Boudy* also states that "a district court may 'implicitly reject[]' lesser sanctions as inappropriate when it determines that dismissal was the only effective option," as this Court did both implicitly and explicitly in the February 3 Order. 2026 WL 507784, at *6 (citing *Atl. Sounding Co. v. Fendlason*, 555 F. App'x 378, 380 (5th Cir. 2014)).

emphasized that Mr. Biggs has repeatedly advanced the same false assertions *after* the affidavit was filed. *See* FED. R. CIV. P. 11(b) (attorneys violate Rule 11 by "signing, filing, submitting, *or later advocating*" a deficient pleading (emphasis added)); *see also, e.g.*, ECF No. 212 at 9 ("Plaintiffs' malfeasance did not stop at the mere *submission* of a false Affidavit. Plaintiffs cited Ms. Zallar's Affidavit over a dozen times in asking the Court to deny GHG's Motion to Dismiss. And the Court *relied* on said Affidavit when it denied GHG's Motion to Dismiss on June 30, 2023."); ECF No. 212 at 19 ("[Mr. Biggs] repeatedly urged the Court to credit the facts stated therein in denying GHG's Motion to Dismiss."). He continued to maintain that "[t]here is nothing in Ms. Zallar's affidavit that is false" at the sanctions hearing. ECF No. 206 at 26. And Mr. Biggs "followed court orders only because he was forced to do so—in the case of the Affidavit by confronting Ms. Zallar's deposition testimony, and in the case of Dr. Tyson's deposition, by being ordered to appear for a deposition supervised by a federal magistrate judge." ECF No. 212 at 22.

The Court expressly disclaims the idea that Mr. Biggs was sanctioned for submitting a false affidavit *only*.[7] He was sanctioned because he continued to present that affidavit to the Court long after it was clear that it was largely false. Even when given an opportunity to backtrack at the sanctions hearing, he "insiste[d] on maintaining his 'patently unreasonable litigation position[].'" ECF No. 212 at 25 (quoting *Sarco Creek*, 167 F. Supp. 3d at 845). The Court found Mr. Biggs's refusal to confront the facts of this case to be a "bad-faith abuse of

---

[7] That open-ended attorney's fees awards are not final cuts both ways. This principle permits Mr. Biggs to appeal the attorney's fee award separately at a later date, as his Notice of Appeal suggested. But it also means the Court's judgment was interlocutory as to fees until today's Order. And in its final Order on attorney's fees, the Court disavows this misreading of the February 3 Order.

the litigation process." *Id.* And as the Court made clear in the February 3 Order, this behavior was just one part of a pattern of contumacious behavior unbecoming of a member of the bar.[8]

Second, to the extent the Court's February 3 Order may be read as two independent parts, the Court separated the Order into those parts to make clear that it was not dismissing Plaintiffs' Amended Complaint under Rule 11. *See* ECF No. 212 at 17 ("Because [Rule 11] limits sanctions to monetary penalties and nonmonetary directives to parties and counsel, the Court cannot dismiss this case under Rule 11."). But the Court describes much of the same misconduct in Part II of the Order because that misconduct led the Court to sanction Mr. Biggs under both Rule 11 and its inherent powers. As the Order noted, this inherent power "'can be limited by statute or rule,' such as Rule 11, but courts may invoke this inherent power 'even if procedural rules exist which sanction the same conduct.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The Court invoked both Rule 11 and its inherent powers in the February 3 Order, but the same misconduct is described throughout the Order in the same way it has permeated this entire case.

Third, even if the Rule 11 sanction relied only on the affidavit's initial filing, MHB is wrong to suggest that Mr. Biggs performed a sufficient prefiling investigation under the "snapshot rule." *See* ECF No. 224 at 14; *Thomas*, 836 F.2d at 873–74. To the contrary: The Court found that "all five *SyncPoint Imaging* factors—and the sixth factor from Judge Boyle's district court opinion in *Skidmore*—cut against Mr. Biggs." ECF No. 212 at 16 (citing *SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*, No. 2:15-CV-247, 2018 WL 6788033, at *4 (E.D. Tex. Dec. 26, 2018); *Skidmore Energy, Inc. v. KPMG*, No. 3:03-CV-2138, 2005 WL

---

[8] Even now, nearly six weeks after the Court's February 3 Order, Mr. Biggs still has not updated his CM/ECF contact information as required by the Local Rules. The Court reminded all counsel, including Mr. Biggs, of this obligation on February 27, 2026. *See* ECF No. 232 at 2 (citing N.D. TEX. LOC. R. 83.13). Mr. Biggs responded that he would "update his contact information" and that he "remains counsel for Plaintiffs." ECF No. 236 at 1. He still has not done so, which means he is seemingly not receiving ECF notifications in a case where he is serving as counsel for multiple parties.

8158140, at \*6 (N.D. Tex. Mar. 18, 2005)). *Cf.* ECF No. 224 at 13 (citing *Thomas* for the same factors). Those factors are:

> the time available to the signer for investigation, the extent of the attorney's reliance upon his client for the factual support for the document, the feasibility of a pre-filing investigation, whether the attorney accepted the case from another attorney, the complexity of the factual and legal issues, and the extent to which the development of the factual circumstances requires discovery.

*Skidmore*, 2005 WL 8158140, at \*6.

MHB insists it was enough for Ms. Zallar to bring "extensive supporting documentation" to "an extensive meeting" Mr. Biggs had with her about her affidavit. ECF No. 224 at 14; *see also id.* at 21 ("Mr. Biggs reviewed this information, exceeding a hundred pages, which corroborated Ms. Zallar's statements to him orally and by email."). It was not. However extensive their meeting—and Mr. Biggs told the Court at the sanctions hearing that it was not[9]—Ms. Zallar's affidavit was the hinge point of early discovery in this case, the key document Mr. Biggs presented to the Court as the reason to deny GHG's motion to dismiss. "The Court took Plaintiffs at their word" at this early stage of the litigation. ECF No. 212 at 10. And "this litigation lingered, languished, and limped along for nearly three (3) more years" as a result. *Id.* Again, MHB misreads the February 3 Order to the extent it believes the Rule 11 sanctions were based on the initial signing of the affidavit alone. But even if they were, Mr. Biggs's prefiling investigation was not sufficient in these circumstances.

And fourth, the Court clarifies what it means by "bad faith." *See* ECF No. 212 at 22 ("[Mr. Biggs's conduct] is precisely the kind of 'bad faith or willful abuse of the judicial process' that courts should exercise their inherent sanction power to deter." (quoting *Sarco*

---

[9] "It was all based on her own words. I'm typing it up as she's telling me over the phone and then, you know, rewording it in a more legal—you know, a more—a format more appropriate for an affidavit than a telephone conversation. It's not that I'm trying to write her own affidavit. And clearly, this isn't a fill-in-the-blank affidavit. This is very customized to this case." ECF No. 212 at 16 (quoting ECF No. 206 at 100).

*Creek,* 167 F. Supp. 3d at 845)). To summarize Mr. Biggs's misconduct in a sentence, he asked the Court to rely on a false affidavit to defeat GHG's motion to dismiss and continued to present that affidavit's falsehoods to the Court for years, long after its "obvious distortions" became apparent. ECF No. 212 at 19. In the Court's view, it is a distinct possibility that Plaintiffs brought this case to exact revenge, in the form of litigation costs, on a former negotiating partner they believe did them wrong. That Mr. Biggs actively concealed the nature of this case from MHB supports this conclusion, as does his apathetic approach to litigating a case he himself brought. Whatever the merits of this idea, any suggestion that GHG wronged Plaintiffs must be legally cognizable and channeled through recognized causes of action. Plaintiffs' claims were not.

Take Plaintiffs' tortious interference claim, their first cause of action against GHG. Under Texas law, tortious interference claims require the plaintiff to prove four elements: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Mr. W Fireworks, Inc. v. NRZ Inv. Grp., LLC,* 677 S.W.3d 11, 26 (Tex. App.—El Paso 2023, no pet.) (citing *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000)).

Plaintiffs did have valid contracts with their prior ACO, Amarillo Legacy Medical ACO.[10] But they exercised their right to terminate those contracts, choosing to let those contracts lapse in order to partner with AKOS on the day of the ACO registration deadline. *See* ECF No. 212 at 5 ("Shockingly, Plaintiffs abandoned their decade-old ACO on the day of the CMS registration deadline—based on a supposed contract that they 'now cannot find.'"

---

[10] Even the existence of a valid contract between two of the Plaintiffs and their old ACO was in doubt for much of this case—including at the sanctions hearing—until Mr. Biggs directed the Court to *GHG's* summary judgment appendix in his post-hearing brief, which contains copies of those contracts. *See* ECF No. 209 at 8 (citing ECF Nos. 156-14 and 156-15).

(quoting ECF No. 182 at 2)). This cannot constitute tortious interference under Texas law. *See Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (J. Brown, J.) ("The supreme court has also instructed that a party cannot be liable for inducing another party 'to do what it had a right to do' under a contract." (quoting *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex.1997)); *Duncan v. Hindy*, 590 S.W.3d 713, 727 (Tex. App.—Eastland 2019, pet. denied) (noting that "a permissible basis" for ending a contractual relationship, such as a party's "decision to terminate," cannot support "a claim for tortious inference with an existing contract").

It was *Plaintiffs themselves* who chose to abandon their old ACO, on the hunt for higher profits. *See, e.g.*, ECF No. 156-1 at 16–17 ("[AKOS] was noted to have the better financial terms."). Plaintiffs left their proven ACO for a financially unstable one that hadn't even qualified for the ACO Reach program at that time, *without investigating AKOS's financial status*. *See* ECF No. 165-1 at 144–45 ("Did you ever ask [AKOS] for copies of any financial statements?" "No." "Did you ever ask for copies of any financial statements of GHG?" "No."). That was Plaintiffs' mistake, not GHG's.

And that was just one of Plaintiffs' claims. Their breach of contract claim fares even worse. Plaintiffs brought this cause of action against AKOS alone based on their breach of a supposed "contract" between them. But in more than three years, Plaintiffs never produced any such contract, having seemingly "lost" this case's single most important document—if it ever existed at all. This beggars belief, to put it generously, as the Court noted in its February 3 Order. *See* ECF No. 212 at 24 ("Plaintiffs cannot produce [this contract] in written or electronic form, notwithstanding their day-to-day practice in a healthcare sector replete with paperwork requirements—specifically, a Medicare practice with document-intensive CMS compliance rules and regulations."); *see also id.* at 212 at 5 n.4 (Mr. Biggs stating "I agree it's

shocking and I'm disappointed in my client . . . ." (quoting ECF No. 206 at 106)). Plaintiffs wanted the Court to take them at their word anyway, and to award them damages for the alleged breach of a contract they cannot produce. *See* ECF No. 212 at 5 (quoting ECF No. 182 at 2 ("Plaintiffs cannot locate their copy of the Participation Agreement . . . ."); ECF No. 182 at 4 ("AFP has clearly executed the Participation Agreement which it now cannot find.")); *see also* ECF No. 212 at 5 ("Even the part of the contract that Plaintiffs describe as 'fully executed'— the three-page Provider Joinder Agreement, which appears to be a mere addendum—is signed only by Plaintiffs." (quoting ECF No. 182 at 2)).

### III. Calculation of Fees Award

The Court limited GHG's fee award to "reasonable expenses incurred in litigating" its Motion for Sanctions. ECF No. 212 at 1. This means the final fees and expenses GHG may claim were those related to the supplemental briefing the Court requested from both parties at the sanctions hearing, which GHG filed on December 12, 2025. ECF No. 208.

However, GHG writes in its reply to the MHB Brief that it "has been forced to incur substantial additional fees in responding to the unsolicited MHB briefing and seeks leave to supplement its previous filings to recover such fees." ECF No. 239 at 4. Construing this as a motion for leave to supplement the GHG Affidavits to recover additional attorney's fees, the Court **DENIES** it. The Court will not consider any subsequent motions to recover additional fees incurred after December 12, 2025.

#### A. The GHG Affidavits

Turning to the GHG Affidavits themselves, GHG seeks to recover $411,689.36 in fees and expenses it says it "accrued in the production and argument of the Motion for Sanctions." ECF No. 215 at 2. GHG further states that it has spent a total of "$1,596,680.46 in fees, and consulting expenses in the amount $6,900.00" defending this litigation. *Id.*

"After a violation of Rule 11(b) is established, the Rule empowers the court to impose appropriate sanctions on the attorneys, law firms, or parties responsible for the violation." *SEC v. Faulkner*, No. 3:16-CV-1735, 2018 WL 5924042, at *2 (N.D. Tex. Nov. 13, 2018) (citing FED. R. CIV. P. 11(c)(1)). "The court has broad discretion in fashioning an appropriate sanction." *Id.* In awarding Rule 11 sanctions, the Court must address:

> (1) the specific conduct giving rise to its sanctions order; (2) the expenses or costs caused by the violation of the Rule; (3) whether or not the costs or expenses were reasonable, as opposed to self-imposed, mitigable, or the result of delay in seeking court intervention; and (4) whether or not the sanctions imposed are the least severe sanction adequate to achieve the purposes of Rule 11.

*Id.* (citing *Topalian v. Ehrman*, 3 F.3d 931, 936–37 (5th Cir. 1993)).

The Court has already addressed the first two factors in both the February 3 Order and in today's Order. Now, after receiving the GHG Affidavits, the Court continues its analysis.

### B. GHG's Reasonable Expenses

As to "whether or not [GHG's] costs or expenses were reasonable," the Court begins with the fees GHG is categorically *not* entitled to claim. *Faulkner*, 2018 WL 5924042, at *2. As already noted, GHG's reasonable expenses incurred in litigating its Motion for Sanctions do not include any attorney time expended after December 12, the date on which GHG filed its final brief, because the parties are no longer litigating the Motion for Sanctions. The Court has also excluded any time GHG attorneys billed responding to the Court's request for supplemental briefing on compliance with Rule 11's safe harbor provision. *See* ECF Nos. 210, 211. This is because GHG should have included information about the safe harbor letter it sent to Mr. Biggs in its original briefing, so it would be unfair to hold Mr. Biggs liable for GHG's oversight. Other entries read "no charge," but still list dollar amounts. *See, e.g.*, ECF No. 215-1 at 6. GHG is also not entitled to fees related to preparing the GHG Affidavits

because this administrative work is separate from litigating the Motion for Sanctions itself. And lastly, several billing entries reflect accounting errors that resulted in the attorney charging a higher hourly rate than $1,450/hour. *See, e.g.*, ECF No. 215-1 at 7. The Court finds these expenses to not be reasonable, and it has accordingly excluded related billing entries from its calculations.

The Court next decides if GHG's remaining attorney's fees were reasonable. "It is appropriate to use the lodestar method to determine whether attorney's fees are reasonable for the purposes of Rule 11 sanctions." *Faulkner*, 2018 WL 5924042, at *2 (citing *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568–69 (5th Cir. 2006)). "The lodestar fee is calculated 'by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.'" *Id.* (quoting *Rutherford v. Harris Cnty.*, 197 F.3d 173, 192 (5th Cir. 1999)). "The Court determines the appropriate hourly rate based upon the prevailing community standards for professionals of similar experience in similar cases." *SEC v. Allen*, No. 3:11-CV-882, 2013 WL 12125996, at *2 (N.D. Tex. Feb. 26, 2013) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995)). "Thus, the Court must determine the reasonable hourly rates of the applicants and the reasonable number of hours expended." *Id.* "This determination is made based on the market conditions in the 'community in which the district court sits.'" *Faulkner*, 2018 WL 5924042, at *2 (quoting *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).

The MHB and Biggs Objections dispute GHG's hourly rates and the number of hours GHG's attorneys expended. The Court addresses the hourly rates first.

The hourly rates of GHG's attorneys range from $450/hour to $1,450/hour, with an Amarillo attorney and two Stone Hilton partners representing the lower and upper ends of that spectrum, respectively. Stone Hilton writes in its Affidavit that its hourly rates are

"consistent with the prevailing market rates in Dallas-Fort Worth, Texas, and the Northern District of Texas more broadly." ECF No. 215-3 at 3. But as Mr. Biggs and Plaintiffs rightly point out, "the relevant market for hourly rates is the Amarillo Division," not DFW. ECF No. 230 at 2; *cf. Kemah*, 285 F.3d at 368 ("[T]he 'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits'" (quoting *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir.1998))). GHG appears to concede this in its Reply to the Biggs Objection, writing that "[e]ven if the relevant market is narrower than the Northern District, the Fifth Circuit has recognized that out-of-market rates may be appropriate where out-of-market counsel are necessary." ECF No. 248 at 5 n.2. And "[g]enerally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Kemah*, 285 F.3d at 368.

The Court does not doubt that Stone Hilton's attorneys deserve to bill $1,450/hour for their services, or even more, especially in exceptional cases where their appellate expertise is more applicable. But this case was litigated in the Amarillo Division of the Northern District of Texas, and the Court must limit the attorney's fees award to an amount that is reasonable for the Amarillo bar. *See G.C. Dev. Corp. v. Zayas*, No. CV B-15-129, 2017 WL 1273965, at *3 (S.D. Tex. Mar. 15, 2017), *report and recommendation adopted*, No. CV B-15-129, 2017 WL 1230814 (S.D. Tex. Apr. 4, 2017) (noting that while there is "no precise definition of the term 'community where the district court sits,'" most cases have "focused on the city/region where the district court heard the case"); *see also id.* ("If the Fifth Circuit had intended for the Court to consider the entire district to be the touchstone of calculating attorney fee awards, it would have stated that the Court was to consider 'the prevailing market rates across the district,' or something to that effect."); *see also id.*, at *4 ("Texas courts have looked to the prevailing rate in the county where the case was tried."). Further, hourly rates "are to be computed according to the prevailing market rates in the relevant

33

legal market, not the rates that 'lions at the bar may command.'" *Id.*, at \*3 (quoting *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000)).

Because "the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there" and the only affidavit of a local attorney before the Court is Jeremi Young's, the Court finds that his hourly rate of $450/hour is a reasonable rate. MHB and Mr. Biggs emphatically agree that Mr. Young's rate is reasonable. *See* ECF No. 230 at 3 (asking the Court to rely on "the affidavit of GHG's own lawyer, Mr. Young, a deeply experienced Amarillo practitioner"); ECF No. 222 at 8 ("MHB submits that an hourly rate of $450—the hourly rate sought by GHG's local counsel, Jeremi Young—is a reasonable hourly rate for litigators in the Amarillo Division.").

As to total hours expended, GHG's four attorneys collectively spent 521.2 hours litigating its Motion for Sanctions. *See* ECF No. 222 at 2. The MHB and Biggs Objections argue that this is unreasonable. *See, e.g.*, ECF No. 230 at 7 ("[A] fees request of $411,689 to draft and argue a single motion is . . . grossly excessive."). But as GHG notes, "no litigator routinely encounters the falsification of evidence for the purpose of keeping alive a case that is simultaneously complex and frivolous." ECF No. 248 at 6. Litigating the Motion for Sanctions was therefore "anything but straightforward," as GHG argues, especially when the case had been ongoing for nearly three years before the Motion for Sanctions was filed. *Id.* For the same reasons, the hours expended do not appear to have been easily avoided or mitigated. GHG's hourly total also includes time billed for work the Court has already determined GHG is not entitled to claim, so the true total is lower. Thus, given the uniqueness of this case and the pervasiveness of Mr. Biggs's misconduct, the Court finds that the remainder of GHG's hours billed were reasonable.

Based on the Court's review of the GHG Affidavits, GHG reasonably billed 444.5 hours litigating its Motion for Sanctions. Multiplied by an hourly rate of $450/hour, this means GHG reasonably incurred $200,025 in fees and expenses.

Awarding GHG this amount would exceed what suffices to *deter* similar misconduct in the future. *See McGowan & Co. v. Bogan*, 93 F. Supp. 3d 624, 656 (S.D. Tex. 2015) ("[T]he purpose of Rule 11 is to deter groundless proceedings, and not necessarily to compensate wronged parties." (quoting *Elliott v. M/V Lois B.*, 980 F.2d 1001, 1007 (5th Cir. 1993))). Thus, the final step in the analysis is to consider the least severe sanction that will still accomplish the deterrent function of Rule 11.

### C. Least Severe Sanction Adequate to Rule 11

As in so many areas of law, a multifactor test guides courts' assessment of the least severe sanction that will nonetheless suffice to deter future similar conduct. "In particular, the Court should consider the following nine factors:"

> (1) whether the improper conduct was willful, or negligent;
> (2) whether it was part of a pattern of activity, or an isolated event;
> (3) whether it infected the entire pleading, or only one particular count or defense;
> (4) whether the person has engaged in similar conduct in other litigation;
> (5) whether it was intended to injure;
> (6) what effect it had on the litigation process in either time or expense;
> (7) whether the responsible person is trained in law;
> (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and
> (9) what amount is needed to deter similar activity by other litigants[.]

*Smith v. State Farm Lloyds*, No. 2:18-CV-210, 2020 WL 2832393, at *6–7 (N.D. Tex. June 1, 2020) (quoting FED. R. CIV. P. 11 advisory committee's note to 1993 amendment).

Most of these factors cut against Mr. Biggs, but not all. For example, while his decision to repeatedly advocate falsehoods to the Court was perhaps only negligent, it was part of a years-long pattern of activity. Even at the sanctions hearing, Mr. Biggs insisted that *everything* in Ms. Zallar's affidavit was correct, refusing to entertain the idea that even a

small part of it might be false. He asked the Court to credit that affidavit at the hearing, as if the previous two-and-a-half years of discovery had simply never happened. He is also an attorney with nearly two decades of experience, and was a partner at his former firm, which is well-respected in the Amarillo area. His misrepresentations infected not only a single pleading, but multiple filings and court appearances spanning years. And as the Court has discussed at length, his improper conduct was the reason this case survived the motion-to-dismiss stage and forced GHG to incur more than $1 million in additional expenses.

Given these factors and the unique circumstances of this case, the Court finds that a less severe sanction is adequate to serve the purposes of Rule 11. Accordingly, the Court **AWARDS** GHG $25,000.

The Court's determination that a less severe sanction is adequate here was guided by several additional facts specific to this case. First, because exceptional circumstances exist in this case and MHB is therefore not jointly liable for Mr. Biggs's violations, deterrence is about what suffices to deter individual attorneys only. A more severe sanction would likely be needed in a case where a law firm itself participated in or was aware of an attorney's misconduct, but that is not what happened here.

Second, though Mr. Biggs alone is liable for this award, he nonetheless forced GHG to expend roughly $1.6 million in attorney's fees during the three years this case "lingered, languished, and limped along" due to his unbecoming conduct. ECF No. 212 at 10. GHG may be forced to expend still more on appeal. By contrast, in the unlikely event Plaintiffs had been able to prove their claims, they stood to recover only about $3 million. The Court considered this imbalance in determining the proper fee award.

Third, the Court calculated the fee award based on Mr. Biggs's repeated Rule 11 violations only. The Court did not consider Mr. Biggs's questionable behavior within his

former firm, as that conduct is not relevant under Rule 11. Even so, as the Court has already noted, that misconduct is consistent with the way in which Mr. Biggs litigated this case.

And fourth, because the Court's final fee award is less than either the MHB or Biggs Objections requested, it is in a sense irrelevant whether those Objections were properly filed. That is, even if the Court had sustained all or virtually all of their objections, the final amount would almost certainly have been greater than $25,000. Again, the Court did not ask for these Objections, and neither Mr. Biggs nor MHB asked for leave before filing them. The Court considered the Objections nonetheless.

CONCLUSION

For the foregoing reasons, the Court **AWARDS** GHG $25,000. It is **ORDERED** that Mr. Biggs alone is liable for this award.

**SO ORDERED**.

March 13, 2026.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE